UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:07-CR-103-DCR-HAI-1 |
| | ) | No. 6:12-CV-7200-DCR-HAI |
| v. | ) | |
| | ) | |
| ROCKY BRUMMETT, | ) | RECOMMENDED DISPOSITION |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On March 5, 2012, Rocky Brummett, proceeding pro se, filed a motion seeking to vacate his sentence pursuant to 28 U.S.C. § 2255.  D.E. 228.  The United States filed a response to the § 2255 motion on June 15, 2012.  D.E. 238.  Defendant filed a reply on August 13, 2012.  D.E. 248.  Pursuant to local practice and 28 U.S.C. § 636(b)(1)(B), this matter was referred to the undersigned for a recommended disposition.  For the reasons that follow, Defendant has failed to establish that he is entitled to relief pursuant to 28 U.S.C. § 2255.  Therefore, the Court **RECOMMENDS** that his motion be **DENIED**.

## I. BACKGROUND

On November 2, 2007, a federal grand jury returned an indictment as to Rocky Brummett, as well as his co-defendants Christopher Buttrey, Kyle Johnson, Bonnie White, and Timothy Roberts.  D.E. 1.  The single count returned alleged that Defendant conspired with his co-defendants "to knowingly and intentionally manufacture fifty grams or more of methamphetamine, a Schedule II controlled substance, a violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846."  *Id.* at 1.  Per a Notice of Penalty Enhancement filed by the United

States pursuant to 21 U.S.C. § 851 (D.E. 75), Defendant faced a statutory minimum of twenty years in prison, with a maximum term of life, a fine of up to $8,000,000.00, and supervised release for not less than five years.  *See* 21 U.S.C. § 841(b)(1)(A) (2007).

### A.  Pre-rearraignment Proceedings

At arraignment on January 9, 2008, Fred C. White was appointed as Rocky Brummett's counsel pursuant to the Criminal Justice Act.  D.E. 28.  Mr. White filed a motion to withdraw on March 7, 2008 (D.E. 60), and Judge Reeves appointed Jason Kincer in his stead.  D.E. 61.

Mr. Kincer's second filing in this matter was a Notice of Insanity Defense and Request for Mental Examination.  D.E. 76.  Judge Reeves granted Defendant's motion (D.E. 82), and, after a report of Defendant's psychological evaluation at FMC Lexington was received, set a competency hearing.  D.E. 110.  At his competency hearing on October 6, 2008, Defendant stipulated to the findings in the report.  D.E. 111.  Judge Reeves adopted the report and found Defendant competent to stand trial.  *Id.*

On October 24, 2008, Defendant filed a pro se motion for substitution of counsel.  D.E. 126.  Judge Reeves set a hearing on Defendant's motion for November 5, 2008.  D.E. 125.  In response, Mr. Kincer filed a motion to withdraw, citing as grounds that Defendant had "lost confidence in counsel's ability and advice, rendering it nearly impossible for counsel to continue as his attorney."  D.E. 130.

Judge Reeves appointed Defendant's third trial-level counsel, Willis Coffey, on November 5, 2008.  D.E. 138.  Mr. Coffey's first filing as Defendant's counsel was a motion for Defendant's rearraignment.  D.E. 139.

### B.  Plea Agreement and Sentencing

Defendant pled guilty to the sole count of the Indictment on December 11, 2008.  D.E. 141.  Each of Defendant's co-defendants also had pled guilty by the time of Defendant's rearraignment.  *See* D.E. 89 (Kyle Johnson); D.E. 91 (Christopher Buttrey); D.E. 93 (Timothy Roberts); *and* D.E. 97 (Bonnie White).

On April 2, 2009, Judge Reeves appointed James Hibbard as counsel for Defendant for the sole purpose of "conferring with counsel for the United States in this matter."  D.E. 182.  By a separate order on that same day, Judge Reeves directed the Clerk to file in the record, under seal, a letter from Defendant dated March 29, 2009, but required that it be made available to both Mr. Coffey and the United States.  D.E. 183, 185.  In his letter, Defendant stated that he had several issues he had "attempted to get addressed, but failed."  D.E. 185 at 1.  These ranged from claims of ineffective assistance of counsel on the part of Jason Kincer, to allegations of impropriety on the part of the Assistant United States Attorney.  *See id.*

Pursuant to his usual practice, Judge Reeves did not execute Defendant's plea agreement until Defendant's sentencing on April 7, 2009.  D.E. 186.  The plea agreement states that Defendant would plead guilty to the single charge in his indictment, and in return, the United States would recommend decreasing Defendant's offense level by 2 levels (with an additional one level decrease if his offense level was 16 or higher) via U.S. Sentencing Guidelines Manual § 3E1.1.  D.E. 187 at 2.  In numbered paragraph 7 of the plea agreement, Defendant waived his right to appeal and collaterally attack his guilty plea and conviction.  *Id.* at 2–3.

In his sentencing memorandum, Defendant objected to the Presentence Investigation Report.  D.E. 176.  Specifically, he argued that he should not be labeled as a leader or organizer of the conspiracy, and thus should not be subject to a 4-level sentencing enhancement under U.S.

Sentencing Guidelines § 3B1.1(a).  *Id.*  Defendant also requested a downward departure per U.S. Sentencing Guidelines Manual § 5H1.6, arguing that his inability to fulfill his responsibilities as a father from prison warranted such a departure.  *Id.*  Defendant also filed a supplemental sentencing memorandum.  D.E. 177-1.  Defendant's sole position in his supplement was that any sentence ordered in this matter should run partially concurrent to Defendant's undischarged term of imprisonment pursuant to a state court conviction.  *Id.* at 1.

At the outset of sentencing, Defendant's March 29, 2009 letter to Judge Reeves was addressed by Mr. Coffey and Judge Reeves.  D.E. 206 at 3–4.  Mr. Coffey represented that he had met with Defendant that morning and indicated the letter was "not an intent to withdraw his plea" and that Defendant wanted him to remain as his counsel at the sentencing.  *Id.*  Judge Reeves then heard from Defendant regarding all of his objections to the Presentence Investigation Report.  *See id.* at 4–7.  As to Defendant's objection to an enhancement under U.S. Sentencing Guidelines § 3B1.1(a), the United States agreed with Defendant that such an enhancement was not appropriate in Defendant's case.  D.E. 206 at 5.

Judge Reeves declined to apply a downward departure per U.S. Sentencing Guidelines Manual § 5H1.6, but he did take Defendant's family ties into consideration when he decided not to impose a sentence higher than the mandatory minimum.  D.E. 206 at 27–28.  Judge Reeves explained that, given the mandatory minimum faced by Defendant, a departure allowing Defendant to provide immediate care for his children would be a substantial departure unwarranted by the facts of Defendant's case.  *Id.* at 6.  Mr. Coffey acknowledged that, per § 5H1.6, Defendant's request on this issue was moot because the United States was not going to file a motion for downward departure pursuant to 18 U.S.C. § 3553(e).  *Id.* at 6–7.

4

Additionally, Judge Reeves rejected Defendant's argument that his sentence should run at least partially concurrently to his undischarged state sentence.  D.E. 206 at 29–31.  Judge Reeves found that the connection between Defendant's charge in this matter and the charges in his state court matters was too tenuous to support a partially concurrent sentence.  *Id.* at 30.

The last issue addressed at sentencing was the United States's failure to move for a downward departure under U.S. Sentencing Guidelines Manual § 5K1.1 or 18 U.S.C. § 3553(e).  D.E. 207.  The United States explained that, while Defendant had provided to it some information it felt was truthful, none of the information had proven useful up to that point.  *Id.* The United States expressed that it did not want to delay Defendant's sentencing any further waiting for his information to be of substantial assistance given that Federal Rule of Criminal Procedure 35(b) could reduce Defendant's sentence at some date in the future if his information qualified.  *Id.*

Judge Reeves thoroughly reviewed the sentencing factors listed in 18 U.S.C. § 3553.  D.E. 206 at 25–31.  Judge Reeves focused on Defendant's history of drug addiction and included a recommendation to the Bureau of Prisons that Defendant participate in the 500-hour RDAP program for substance abuse education and treatment.  *Id.* at 26, 32.  Judge Reeves also highlighted Defendant's family ties and positive steps taken by Defendant.  *Id.* at 27–29.  Ultimately, Judge Reeves sentenced Defendant to the mandatory minimum of 240 months of incarceration, to run consecutive to any term of imprisonment under any previous state or federal sentence.  *Id.* at 31; D.E. 191.

### C.  Direct Appeal

On April 8, 2009, the day following his sentencing, Defendant filed a Notice of Appeal to the United States Court of Appeals for the Sixth Circuit.  D.E. 192.  A week later, on April 15,

2009, the Sixth Circuit granted Willis Coffey's motion to withdraw as counsel.  D.E. 197.  On April 23, 2009, the Sixth Circuit also terminated James Hibbard as counsel as he was appointed in a limited capacity only.  The Court of Appeals appointed Mark Wettle as Defendant's counsel under the Criminal Justice Act on May 14, 2009.  D.E. 201.

The Sixth Circuit filed its Opinion regarding Defendant's appeal on November 23, 2010.  D.E. 211.  In his appeal, Defendant raised one issue: the denial of his request for a partially concurrent sentence pursuant to U.S. Sentencing Guidelines Manual § 5G1.3(c).  *Id.* at 1.  After reviewing the factual and procedural posture of the case, the Court of Appeals described the question before it as whether or not the district court abused its discretion by sentencing Brummett to consecutive sentences.  D.E. 211 at 3.  It noted that the district court does not abuse its discretion so long as the rationale underlying the decision is clear and that the decision seeks to ensure an appropriate incremental penalty.  *Id.* at 3–4.

The Sixth Circuit found that Judge Reeves "received detailed argument on the § 5G1.3(c) issue from both parties."  D.E. 211 at 6.  The Court noted that Judge Reeves considered the 18 U.S.C. § 3553(a) factors and then discussed whether Defendant's sentence should be consecutive or concurrent to his undischarged state sentence.  *Id.* at 7.  In its Opinion, the Court reprinted a portion of Defendant's sentencing transcript in which Judge Reeves explains why he did not think it was appropriate to have Defendant's sentence run concurrently with his undischarged state sentence.  *Id.*  The Sixth Circuit concluded that, given Judge Reeves's discussion of the § 3553(a) factors, his colloquies with the parties, and his discussion of why he chose not to have the sentences run concurrently, Judge Reeves's decision was appropriate, and affirmed it.  *Id.* at 7–9.

6

Defendant filed a petition for a writ of certiorari to the United States Supreme Court on February 21, 2011.  D.E. 215.  The Supreme Court denied his petition on March 28, 2011.  D.E. 216.

### D.  Post-conviction Proceedings

On March 5, 2012, Defendant filed a pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody with an accompanying memorandum.  D.E. 228.  In his 94-page memorandum, Defendant alleges nine grounds for relief:

1. "Ineffective assistance of counsel in violation of the Sixth Amendment and the laws of the Supreme Court."  D.E. 228 at 4.  In his memorandum in support, Defendant titles this ground "Ineffective assistance of counsel(s)."  D.E. 228-2 at 2.

2. "Ineffective assistance of counsel with respect to petitioner's plea agreement & government misconduct due to breach of plea agreement." D.E. 228 at 5.  In his memorandum in support, Defendant titles this ground "Involuntary plea agreement." D.E. 228-2 at 2.

3. "Government withheld evidence favorable to the petitioner's case – prosecution misconduct – which was used in support of finding guilty in petitioner's case."  D.E. 228 at 7.  In his memorandum in support, Defendant titles this ground "Government withheld evidence."  D.E. 228-2 at 2.

4. "Government misconduct is violation of petitioner's Fifth and Fourteenth Amendment rights."  D.E. 228 at 8.  In his memorandum in support, Defendant titles this ground "Government misconduct."  D.E. 228-2 at 2.

5. "Sentencing issues."  *Id.*

6. "Prior conviction does not qualify as sentence enhancer." *Id.*

7. "Defendant had no reasonable foreseeable outcome of drug quantity attributed to him." *Id.*

8. "Errors at Rule 11 inquiry." *Id.*

9. "Defendant was prejudiced." *Id.*

The United States filed its response to Defendant's § 2255 motion on June 15, 2012. D.E. 238. Included in the response are affidavits from both Jason Kincer and Willis Coffey, as well as letters written from Mr. Coffey to Defendant. D.E. 240. Defendant filed his reply on August 13, 2012. D.E. 248.

On June 24, 2013, Defendant filed a Motion for Permission to Submit a Supplemental Brief as to Rocky Brummett's 2255 Motion. D.E. 253. Defendant sought to file a supplemental brief to raise issues related to the recently decided case of *Alleyne v. United States*, 133 S. Ct. 2151 (2013). *Id.* Judge Reeves granted Defendant's Motion to the extent that the Court will consider the decision in connection with the pending Motion under § 2255, but denied it to the extent that Defendant sought to file an additional brief with the Court. D.E. 254.

## II. DISCUSSION

### A.    Right to Collateral Attack

Generally, a prisoner has a statutory right to collaterally attack his conviction or sentence. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) ("both the right to appeal and the right to seek post-conviction relief are statutory rights . . ."). For a federal prisoner to prevail on a 28 U.S.C. § 2255 claim, he must show that:

> the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack . . . .

28 U.S.C. § 2255(b).  If the movant alleges a constitutional error, he must establish by a preponderance of the evidence, *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006), that the error "had a substantial and injurious effect or influence on the proceedings."  *Watson*, 165 F.3d at 488 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).  If the movant alleges a non-constitutional error, he "must establish a fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process."  *Id.* (internal quotations omitted).

### B.   Defendant Knowingly and Voluntarily Waived His Right to Collateral Attack Except as to His Sentence

A defendant's knowing and voluntary waiver of his right to pursue collateral relief in a plea agreement will preclude his ability to file a subsequent § 2255 motion.  *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007); *Davila v. United States*, 258 F.3d 448, 450 (6th Cir. 2001).  However, even with such a waiver, a defendant can still attack the knowing and voluntary nature of his guilty plea.  *In re Acosta*, 480 F.3d at 422.  In order for a waiver of collateral attack rights to be valid, the defendant must "enter into the waiver agreement knowingly, intelligently, and voluntarily."  *Davilla*, 258 F.3d at 451.  Federal Rule of Criminal Procedure 11(b)(1)(N) requires the District Court to "inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or collaterally attack the sentence."  Compliance with Rule 11(b)(1)(N) is sufficient to show that the defendant entered into the waiver agreement knowingly, intelligently and voluntarily.  *See United States v. Sharp*, 442 F.3d 946, 950 (6th Cir. 2006); *United States v. Wilson*, 438 F.3d 672, 674 (6th Cir. 2006).

Numbered paragraph seven of Defendant's plea agreement states, "[t]he Defendant waives the right to appeal and the right to attack collaterally the guilty plea and conviction,

including any order of restitution." D.E. 187 at 2–3. The Court confirmed Defendant's understanding of this provision at rearraignment:

> THE COURT:                    Now, in your plea agreement there is some waiver language. It's not unusual to have this language in a plea agreement, but anytime it's present, of course, I need to review it with you. And in your case, it's in paragraph seven, and that paragraph provides that you waive the right to appeal and the right to attack collaterally, which means to file a separate lawsuit to challenge, either the guilty plea or the conviction or any order of restitution.
>                               And do you understand that you're waiving or giving up those rights?
>
> THE DEFENDANT:    Yes, sir.
>
> THE COURT:         And do you understand that when you waive the right to collaterally attack something, it means you're giving up the right to file a separate lawsuit to challenge it?
>
> THE DEFENDANT:    Yes, sir.

D.E. 205 at 17–18.

Because Judge Reeves properly explained that Defendant was waiving his right to collaterally attack his guilty plea and conviction, including what "collaterally attack" means, and verified that Defendant understood that he was giving up those rights, the requirements of Federal Rule 11(b)(1)(N) were met. Defendant's plea agreement includes the acknowledgment that Defendant understood the terms of the agreement, that it was fully explained to Defendant, and Defendant confirmed that consultation and understanding during rearraignment. D.E. 187 at 3–4; D.E. 205 at 9–10. Defendant thus entered into the waiver agreement knowingly, intelligently, and voluntarily. Therefore, Defendant cannot attack his guilty plea or conviction except for the knowing and voluntary nature of his guilty plea and ineffective assistance of counsel claims.

The impact of the waiver in this case is difficult to summarize due to the scattered and repetitive nature of Defendant's arguments.  However, given the scope of his waiver, Grounds 1, 2, and 5 of Defendant's § 2255 motion would not have been waived.  The remaining grounds would generally be subject to the waiver, but the Court addresses them on the merits to complete the record in case of objections.

**C.      Ground One – Ineffective Assistance of Counsel**

Defendant's first, and most voluminous, ground for relief in his § 2255 motion is that both Jason Kincer and Willis Coffey provided ineffective assistance throughout his case in violation of the Sixth Amendment.  The numerous claims made by Defendant can be arranged into three categories: claims regarding only Jason Kincer, claims regarding both attorneys, and claims regarding only Willis Coffey.

To successfully assert an ineffective assistance of counsel claim, a defendant must prove both deficient performance and prejudice.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a defendant must prove ineffective assistance of counsel by a preponderance of the evidence).  In order to prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland*, 466 U.S. at 687.  A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances."  *Id.* at 688.  Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  Notably, "[a] fair assessment of attorney performance requires that every effort be made to

11

eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. In order to prove prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. In the context of plea agreements, in order to prove prejudice "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). This analysis often requires an assessment of success at trial in the absence of counsel's errors, such as whether an un-pursued affirmative defense would have been successful or whether uninvestigated evidence would have likely changed the outcome. *Id.* When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695. Courts may approach the Strickland analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id.* at 697.

### 1.     Claims Solely Concerning Mr. Kincer

Defendant makes the following claims concerning Mr. Kincer's performance as counsel:[1]

---

[1] In his filings, Defendant numbered his Grounds and numbered some paragraphs of his memoranda. The Court reviewed the Motion and isolated individual bases within each Ground in order to fully address Defendant's arguments. The claims addressed herein are organized in each Ground roughly by the order in which they appear in the Motion, but the Court's numbering of "claims" herein is the Court's own method of identifying and organizing the many issues raised by Defendant.

1. Mr. Kincer gave Defendant incorrect legal advice regarding a proffer session with the Assistant United States Attorney, which caused Defendant to incriminate himself and thus lose his right to a fair trial.  D.E. 228-2 at 31; D.E. 228-3 at 6, 10.

2. Mr. Kincer left Defendant with the Assistant United States Attorney during a proffer session (Defendant labels this a critical stage) in order to check his Post Office box.  D.E. 228-2 at 32.

3. Mr. Kincer did not tell Defendant he suspected Defendant had permanent brain damage.  D.E. 228-3 at 2.

4. Defendant could not call Mr. Kincer for some time because Mr. Kincer's office did not accept calls from the prison's Evercom phone system.  D.E. 228-3 at 1.

5. Once Defendant was able to call Mr. Kincer, Mr. Kincer never returned Defendant's phone calls.  *Id.* at 2.

6. During the seven months Mr. Kincer represented Defendant, he did not reply to a single letter written by Defendant.  *Id.*

7. Mr. Kincer made no attempt to investigate and prepare for trial.  *Id.* at 3–4.

8. Mr. Kincer did not use the full benefits of 18 U.S.C. § 3006A.  *Id.* at 4.

9. Mr. Kincer did not make available to Defendant the forensic report from his competency evaluation, which had several statements Defendant would have known at the time were false.  *Id.*

10. Mr. Kincer did not explain Defendant's rights during his mental health evaluation, which caused him to withhold helpful information from the examiner.  *Id.*

11. Mr. Kincer's failure to make the forensic report available to Defendant denied Defendant the ability to object to the report and prepare a defense at his competency hearing. *Id.* at 5.

12. Mr. Kincer did not adequately question Agent Edwards as to his intentions toward Kim Boggs and how that affected Agent Edwards's investigation of Defendant. *Id.* at 10–11.

All twelve of Defendant's assertions of ineffective assistance of counsel based upon Mr. Kincer's acts or omissions fail. Defendant alleges that he felt obligated to proceed with a proffer because Mr. Kincer incorrectly told Defendant that statements made to the United States during debriefing could not be used against him in any way, which caused Defendant to incriminate himself and denied him his right to a fair trial. Mr. Kincer states in his affidavit that he "did inform Mr. Brummett, as the undersigned does with all clients engaging in a proffer, that information given during proffers may not be used against them unless they testify as to something different during trial, and remembers the Assistant United States Attorney Erin May Roth reciting those same assertions." D.E. 240-2 at 3. Even if Mr. Kincer did incorrectly tell Defendant that his statements could not be used against him in *any* way, Defendant cannot show prejudice. In order to show prejudice, Defendant needs to show that, absent Mr. Kincer's alleged statement and the resultant proffer, there is a reasonable probability that Defendant would not have pled guilty and would have insisted on going to trial.

First, Defendant does not describe the statements made during the proffers that he claims compelled him to plead guilty. Thus, the Court cannot make any meaningful evaluation as to their evidentiary impact upon his choice to plead guilty or upon a trial under *Hill v. Lockhart*. Second, by the time Defendant chose to plead guilty, per Mr. Coffey's affidavit, he was advised

that statements made during the proffer sessions could only be used against him if he testified inconsistently with those statements at trial.  D.E. 240-1 at 6.[2]  The Court separately addresses Defendant's claims of ineffective assistance of counsel against Mr. Coffey concerning that and related advice below.  However, on its own, Defendant's claim of ineffective assistance against Mr. Kincer on this point fails to establish any prejudice because Defendant chose to plead guilty after receiving accurate advice from Mr. Coffey.  If he had proceeded to trial, he could easily have prevented the introduction of any of his proffered statements by exercising his Fifth Amendment privilege against self-incrimination.

Defendant's second claim regarding Mr. Kincer's absence during a portion of a debriefing session also fails.  The Sixth Circuit has not ruled that debriefing is a critical stage of the proceedings under *United States v. Cronic*, 466 U.S. 648 (1984), nor has it ruled that debriefing is *not* a critical stage.  However, in an unpublished case, the Sixth Circuit *assumed* debriefing was a critical stage for the purpose of that specific appeal.  *Wingo v. United States*, 341 F. App'x 132, 134 (6th Cir. 2009).  In that case, the Sixth Circuit held that per se ineffective assistance of counsel was not established under *Cronic* because, in part, counsel was communicating with the defendant by telephone during the proffer.  *Id.*  The Sixth Circuit also noted that once the defendant agreed to cooperate with the government, the debriefing ceased to be an adversarial proceeding.  *Id.*  Thus, there was no "total absence" of counsel giving rise to a presumption of prejudice.  It is not clear from Defendant's Motion whether or not he had agreed to cooperate with the government prior to Mr. Kincer's physical absence, but Defendant acknowledges that Mr. Kincer participated by phone.  D.E. 228-3 at 28.  Therefore, just as in

---

[2] Neither Defendant nor the United States has specifically discussed the applicability of Federal Rule of Evidence 410 to this claim.

*Wingo*, there was no total absence of counsel and Defendant must prove prejudice under *Strickland*. *See Wingo*, 341 F. App'x at 135.

Defendant has not alleged any prejudice due to Mr. Kincer's telephonic, instead of physical, presence. He conjectures that Mr. Kincer should have taken notes of the debriefing session for use at trial. D.E. 248 at 36. He makes no mention of how the absence of such notes constitutes prejudice by leading him to plead guilty. He also asserts that Mr. Kincer could not have heard the entire session (D.E. 248 at 37), even though Mr. Kincer's affidavit clearly states that he "never was unable to hear or inject himself in the conversation" (D.E. 240-2 at 3). Because Defendant has not shown that Mr. Kincer was absent during a critical stage of the proceeding or that he suffered prejudice due to Mr. Kincer's participation in a debriefing session by telephone, his claim of ineffective assistance of counsel must fail.

Claim 3 alleging ineffective assistance on the part of Mr. Kincer also fails. Defendant states that he did not receive notice that Mr. Kincer thought he might have brain damage until three years later when Mr. Coffey provided a copy of Defendant's file to Defendant that included Mr. Kincer's motion to withdraw. D.E. 228-2 at 5. The Notice of Insanity Defense and Request for Mental Examination filed by Mr. Kincer on Defendant's behalf does state that "[t]he undersigned has serious concerns that the Defendant lacks the ability to understand the nature and seriousness of these proceedings due to prolonged exposure to methamphetamines and other brain injuring drugs." D.E. 76 at 2. Mr. Kincer acted on these concerns by filing the Notice which resulted in Judge Reeves ordering a competency evaluation (D.E. 82) and the issuance of a forensic report concluding that Defendant was competent to stand trial, including that he was capable of consulting effectively with his attorney (D.E. 174).

16

While Mr. Kincer may not have directly expressed his concerns regarding Defendant's mental health to Defendant, he acted upon his concerns in a way coinciding with Defendant's best interests. Mr. Kincer acted reasonably and professionally in pursuing a lack of competency to stand trial and the defense of insanity at the time of the offense. Defendant cannot prove that he suffered prejudice because of Mr. Kincer's failure to specifically tell Defendant of his concerns of brain injury, because even if Mr. Kincer had told him, such knowledge would not have affected the neutral evaluation of the forensic examiner and resultant competency finding, and Defendant has made no suggestion of how such knowledge would have caused him to decide not to plead guilty.

Claims 4 through 8 and Claim 12 concerning Mr. Kincer's representation all fail as well, and all for the same reason: Defendant cannot show prejudice resulted from these instances even if they constituted deficient performance. These are all claims that either Defendant had the opportunity to explore and resolve after Mr. Coffey was appointed to represent Defendant, or that became moot once Mr. Coffey was appointed.

Even if Defendant could not reach Mr. Kincer by phone for a time and Mr. Kincer never returned Defendant's calls or wrote him any letters, claims for which Defendant has not provided any evidence, Mr. Coffey replaced Mr. Kincer as Defendant's counsel. Once Mr. Coffey was appointed, any prejudice to Defendant by Mr. Kincer's alleged lack of communication was nullified, as it was then Mr. Coffey's obligation to maintain effective communication with Defendant.

Similarly, after Mr. Coffey was appointed as counsel for Defendant, any alleged deficiencies in Mr. Kincer's performance in investigating the case, preparing for trial, effectively using the benefits of 18 U.S.C. § 3006A, or questioning Agent Edwards about his intentions

toward Kim Boggs were rendered moot.  Defendant had the opportunity to discuss these concerns with Mr. Coffey, and Mr. Coffey became responsible for the effective handling of Defendant's case.  There is no allegation that, because of Mr. Kincer's alleged deficient performance in those areas, Mr. Coffey would have had insufficient time or opportunity to correct any deficiencies and provide effective assistance of counsel.

In his ninth claim alleging that Mr. Kincer provided ineffective assistance of counsel, Defendant states that Mr. Kincer did not make available to Defendant the forensic report from his competency evaluation.  He further alleges that this prejudiced him because there are statements in that report that are false, and he was denied an opportunity to timely object to them.  However, Defendant has not identified which statements he is referring to or explained how, absent those statements, Defendant would have been found incompetent.  Without this information, even if Mr. Kincer indeed failed to show Defendant the forensic report, Defendant cannot make a showing of prejudice, so this claims fails.

Defendant's tenth claim of ineffective assistance against Mr. Kincer alleges that Mr. Kincer did not explain to Defendant what rights he had during his psychological evaluation.  He specifically contends that Mr. Kincer did not tell him that statements made during the evaluation could not be used to find him guilty, which led Defendant to be unforthcoming to the evaluator regarding the time of the offense.  Defendant has not offered any explanation why withholding information regarding the time of the offense caused him to plead guilty or could have impacted the likelihood of success had he not done so and proceeded to trial.

Defendant does state that he would have offered the fact that he had been "awake for 10 to 12 days at a time, not eating for days at a time, [and] sitting in the car all the time while on

house arrest."  However, Defendant fails to explain in any way how such facts could support a defense of insanity.  Therefore, Defendant's tenth claim of ineffective assistance of counsel fails.

Finally, Defendant alleges that, if Mr. Kincer had provided a copy of the report to Defendant, he would have objected to it and prepared a defense at his competency hearing. Assuming that Mr. Kincer did not show Defendant the forensic report, despite Mr. Kincer's sworn statement to the contrary (D.E. 240-2 at 3), Defendant has failed to state what objections he would have made or how, if he were incompetent, he would have been able to understand the issue so as to assert such objections.  He also does not state what evidence he would have presented to contradict the findings of Dr. Karen Miller in the report.  Defendant has not shown that the result of the competency hearing would have different, and therefore has not established prejudice.

### 2.        Claims Relating to Both Mr. Kincer and Mr. Coffey

Concerning both Mr. Kincer and Mr. Coffey, Defendant claims that:

13. Neither counsel investigated the facts of the case.  D.E. 228-2 at 32.

14. Neither counsel interviewed witnesses favorable to Defendant.  *Id.*

15. Neither counsel followed up on Defendant's state of mind at the time of the offense. *Id.*

16. Neither counsel subjected the United States's case to meaningful adversarial testing. *Id.*

17. Neither counsel investigated the fact that Defendant was on house arrest at his parents' house.  *Id.*

18. Neither counsel investigated potential government misconduct related to Defendant's parole officer not revoking Defendant's parole.  *Id.*

19

19. Neither counsel moved to suppress illegally obtained evidence.  *Id.*

All seven of the claims against both Mr. Kincer and Mr. Coffey fail. Claims 13, 14, and 16 all fail for lack of specificity.  "A motion under § 2255 must consist of something more than legal conclusions unsupported by factual allegations." *Aguirre v. United States*, No. 2:06-CR-76, 2012 WL 3191958 (E.D. Tenn. Aug. 2, 2012) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

As to Claim 13, counsel does have a duty to "make reasonable investigation." *Strickland v. Washington*, 466 U.S. 668, 691 (1984).  However, Defendant does not make specific allegations of what facts counsel did not investigate, except for more specific claims addressed herein such as Claim 17.  Without specific information as to how counsel was constitutionally deficient, *i.e.*, what exactly counsel failed to investigate, the standard of deference to counsel found in *Strickland* controls.  That standard is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.  Because Defendant has not offered specific examples of any failure to investigate, Defendant has not shown that their performance as counsel was constitutionally deficient.  Nor has any failure to investigate been described with sufficient specificity for the Court to determine, as required by *Hill v. Lockhart*, whether uninvestigated evidence would have likely changed the outcome if Defendant proceeded to trial.

Claim 14 fails for the same reason.  While Defendant states that there are favorable witnesses that neither counsel interviewed, Defendant does not offer a list of who these individuals are.  The exception is that at one point he states that "counsel should have interviewed officers involved with case and witnesses to determine my mental capacity at the time of offense."  D.E. 228-2 at 26.  However, Defendant does not name these individuals, does

not offer what statements they would have made, and does not show how their statements would have changed the outcome of the proceedings.

Defendant makes no showing of prejudice under the *Hill v. Lockhart* framework.  Here the claim (liberally construed) is that Defendant would not have pled guilty had these uninvestigated witnesses been sufficiently discovered, implying that they would have testified in Defendant's favor at a trial.  When a defendant claims that his attorney failed to call a witness at trial, he must "[a]t the very least . . . submit sworn affidavits from each of the individuals he has identified as uncalled witnesses stating whether they were in fact available to appear at trial and able to give testimony favorable to [the] defense."  *Talley v. United States,* No. 1:00-cv-74, 2006 WL 3422997, at *10 (E.D. Tenn. Nov. 27, 2006); *see also United States v. Ashimi,* 932 F.2d 643, 650 (7th Cir. 1991) ("Under whatever framework, however, evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.").  Having failed to present such affidavits, the Court cannot make any real assessment of how any testimony from the unidentified defense witnesses would have affected the outcome of a trial.

Claim 16 also fails for lack of specificity.  Defendant is correct that counsel does have an obligation to "subject the prosecution's case to meaningful adversarial testing."  *United States v. Cronic*, 466 U.S. 648, 659 (1984).  Again, however, Defendant has not identified any examples of how counsel failed to do so, but only offers conclusory assertions.  The Court cannot meaningfully evaluate such flimsy contentions under the *Strickland* standard of "reasonable professional assistance."  466 U.S. at 689.  Because Defendant has not offered specific examples of any failure to subject the prosecution's case to meaningful adversarial testing, Defendant has

not shown that their performance as counsel was constitutionally deficient or that he suffered any prejudice.

Defendant's Claim 15 that counsel did not follow up on Defendant's state of mind at the time of the offense is slightly more specific, but it also fails.  Defendant uses the phrase "follow up on," suggesting that he believes more could have been done by both counsel after his evaluation concerning his sanity at the time of the offense.   Given the circumstances of Defendant's case, that belief is unwarranted. The forensic report from Defendant's evaluation at FMC Lexington states very clearly and succinctly, "The information gathered over the course of the evaluation does not support a finding of insanity at the time of the alleged offense."  D.E. 174 at 8.   This was a not a case in which the forensic report was ambiguous or the reporting professional unable to reach a conclusion, either of which may have allowed Mr. Kincer or Mr. Coffey to pursue a defense of insanity.

Claim 17 is that neither counsel investigated the fact that Defendant was on house arrest at his parents' house.  The Court assumes that Defendant's argument is that he presumably could not have participated in the conspiracy to manufacture 50 grams or more of methamphetamine given that he was on house arrest at his parents' house at the time.  However, in Defendant's own Motion he relates that he "would go to trailer [sic] occasionally to see what progress they were making on trailors [sic], there would be several people hanging out, mostly ones with nowhere to go."  D.E. 228-2 at 21.  In addition, in Defendant's Presentence Investigation Report, it states that law enforcement officers saw Defendant enter and exit one of the trailers, apparently engaged in cooking methamphetamine. D.E. 193 at 12–13.  Given that methamphetamine "can be 'cooked' virtually anywhere[,]" *United States v. Beaumont*, 759 F. Supp 339, 340 (E.D. Tex. 1991), there is no reason to believe that Defendant's house arrest would have, if investigated,

yielded evidence  that would have changed Defendant's decision to plead guilty or changed the outcome at a trial.   Because he has wholly failed to establish (or even allege) prejudice, Defendant's claim fails.

As to Claim 18, Defendant presumably contends his "parole officer" did not revoke his "parole" because the federal government asked the officer to allow Defendant to remain free in order to further their investigation of his criminal activities.   No factual detail concerning this claim is presented.  Defendant has not explained how any failure to investigate why there was no revocation caused him to plea when he otherwise would have gone to trial, or how that evidence would have affected a trial.  Because he has wholly failed to allege prejudice, let alone make a showing of prejudice, Defendant's claim fails.

In Claim 19, Defendant alleges that both counsel provided ineffective assistance by failing to move the Court to suppress illegally obtained evidence against Defendant.  Liberally construed, Defendant argues that the February 16, 2006 search of his vehicle and residence, and January 11, 2007 search of his residence violated the Fourth Amendment.  D.E. 228-2 at 14–19; *id*. at 26–30; D.E. 248 at 25–28.

In *Kimmelman v. Morrison,* 477 U.S. 365 (1986), the Supreme Court indicated that trial counsel's failure to file a motion to suppress is not per se ineffective assistance of counsel.  *Id.* at 384.  To establish prejudice where counsel failed to litigate a suppression issue, the defendant must show that a) the suppression claim is meritorious and b) there is a reasonable probability that the outcome would have been different absent the excludable evidence.  *See id*. at 375.  As to the February 16, 2006 search of the vehicle he was driving, Defendant describes the circumstances of that search, but does not articulate a specific theory in support of suppression or identify any authority in support of such a theory.  Very liberally construed, Defendant claims he

was subjected to arrest without probable cause and then law enforcement searched the vehicle he was driving without valid consent.   Defendant's Presentence Investigation Report indicates Defendant consented to the search.   D.E. 193 at 7.   Defendant claims Coffey had a duty to investigate whether consent was made in a voluntary way.   D.E. 248 at 25.   However, Defendant offers no facts whatsoever in support of a theory of involuntary consent—he merely raises a series of questions concerning what occurred without presenting the facts of any purported suppression claim.   Thus, he has failed to describe either a meritorious suppression claim or a reasonable probability of a different outcome if any evidence found in his vehicle were excluded.

In turn, Defendant criticizes law enforcement's use of binoculars to view the curtilage of his residence and description of facts concerning the vehicle searches in an affidavit in support of a warrant for his residence.   D.E. 228-2 at 15–16; *id*. at 26.   As to the curtilage issue, Defendant offers no facts to take law enforcement's efforts outside the rule that viewing curtilage from an open field is not a search under the Fourth Amendment.   *United States v. Hatfield*, 333 F.3d 1189, 1198 (10th Cir. 2003).   At most, Defendant argues law enforcement had to trespass onto his neighbors' private property to get to his, and that the only public access was a locked gate with a no trespassing sign.   D.E. 228-2 at 26.   But the observation of the curtilage in *Hatfield* did occur from an open field owned by the defendant in that case, which the court held was not a search under *United States v. Dunn*, 480 U.S. 294 (1987).   *See Hatfield*, 333 F.3d at 1197–98. Defendant criticizes Mr. Coffey for not actually viewing a surveillance video requested by Mr. Coffey on December 3, 2008.   D.E. 228-2 at 26–28.   Mr. Coffey acknowledges in his affidavit that he believes Defendant is correct, *i.e.*, that the video had not been viewed by counsel prior to the entry of his guilty plea  D.E. 240-1 at 7.   But, that fact does not entitle Defendant to relief as he has made no showing whatsoever of a different outcome had the video been obtained and

24

viewed.   It is not enough under *Kimmelman* to merely raise criticisms and questions as Defendant has done here.  A "reasonable probability" of a different outcome must be established assuming suppression.  Defendant does not identify what should have been suppressed, so the Court cannot even undertake any evidentiary analysis.  As to the affidavit concerning the search warrant, Defendant has not filed it and therefore the Court can make no meaningful assessment of its validity.  Defendant's claims therefore fail under *Kimmelman*.

### 3.        Claims Solely Concerning Mr. Coffey

Defendant makes the following claims concerning assistance rendered by Mr. Coffey:

20. Mr. Coffey told Defendant that "he couldn't go to trial, because debriefing statements made during debriefing would be used against defendant if he went to trial."  D.E. 228-3 at 11.

21. Mr. Coffey coerced Defendant into continuing debriefing with the United States by vouching for the trustworthiness of Assistant United States Attorney Erin May.  *Id.* at 11–12.

22. Mr. Coffey did not object to the United States's breach of the plea agreement at sentencing when no motion for a downward departure under U.S. Sentencing Guidelines Manual 5K1.1 was filed.  *Id.* at 14.

23. Mr. Coffey did not object to the calculation of the quantity of methamphetamine attributed to Defendant.  *Id.* at 15.

24. Mr. Coffey gave Defendant incorrect advice by telling him that he could raise all sentencing issues on appeal.  *Id.*

25. Mr. Coffey did not preserve Defendant's sentencing issues for appeal.  *Id.*

As to Claim 20, the record refutes Defendant's claim. At his rearraignment, Defendant acknowledged that no one had "made any threats or in any way forced [him] to enter into the plea agreement." D.E. 205 at 13. Judge Reeves specifically asked Defendant, "Do you also understand that if you wanted to continue with a plea of not guilty and proceed to trial that you have the right to do that?" *Id.* at 19. Defendant replied, "Yes, sir." *Id.* Judge Reeves also listed Defendant's rights at trial and asked if Defendant understood that by pleading guilty, he was giving up those rights. *Id.* at 20–21. Defendant replied, "Yes, sir." *Id.* at 21. In *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999), the Sixth Circuit held that a properly conducted guilty plea colloquy cures any misunderstandings that a defendant may have about the consequences of a plea.

Given the numerous times Judge Reeves addressed the subject with Defendant at his rearraignment, Defendant was fully informed of his trial rights via the Court, despite Mr. Coffey's alleged statement. Despite being informed of his trial rights, including the right to continue to plead not guilty and continue to trial, Defendant accepted the plea agreement and pled guilty. Defendant has not sufficiently shown that, but for counsel's alleged statement, he would have continued to trial.

Regarding Claim 21, even if Mr. Coffey did state an opinion regarding Assistant United States Attorney Erin May's trustworthiness, Defendant is unable to show he was prejudiced by such a statement. Defendant does not make the claim that he would have gone to trial but for Mr. Coffey's statement. He makes the claim in his Motion that he would not have continued to participate in debriefing sessions but for Mr. Coffey's statement, but that falls short of the prejudice showing required by *Hill v. Lockhart*. D.E. 228-3 at 11–12.

26

Claim 22 states that Mr. Coffey was ineffective for not objecting at sentencing when the United States purportedly breached the plea agreement by not moving for a downward departure under U.S. Sentencing Guidelines Manual 5K1.1.  It is true that "any amount of actual jail time has Sixth Amendment significance."  *Glover v. United States*, 531 U.S. 198, 203 (2001).  However, it is also true that "counsel's failure to raise futile objections and arguments does not amount to constitutionally deficient performance."  *Lyons v. Caruso*, 202 F.3d 269 (6th Cir. 1999) (Table).

The relevant part of Defendant's plea agreement states:

> If the Defendant provides substantial assistance in the investigation or prosecution of other persons who have committed an offense, the United States will file a motion for downward departure pursuant to U.S.S.G. § 5K1.1 . . . The determination as to whether the Defendant provided substantial assistance and otherwise qualifies for the motion *is solely within the discretion of the United States*.

D.E. 187 (emphasis added).  In short, the plea agreement states that **only** the United States could decide whether to move for a downward departure under § 5K1.1.  Assistant United States Attorney May exercised the discretion reserved to her in the plea agreement; thus, she did not breach it when she did not move for a downward departure under § 5K1.1.  In addition, because of the reservation of discretion, Judge Reeves would not have had the authority to force AUSA May to move for such a downward departure even if Mr. Coffey had objected.  In sum, if Mr. Coffey had made an objection to the United States's failure to file a motion for downward departure under § 5K1.1, it would have been an entirely futile objection.  Because to have objected would have been futile, Mr. Coffey's abstention from objecting does not constitute deficient performance.

Defendant states in Claim 23 that Mr. Coffey did not object to the calculation of the quantity of methamphetamine attributed to Defendant for sentencing purposes.  Defendant

claims prejudice in that co-defendant Johnson successfully objected to his quantity of methamphetamine being calculated on a 100% yield, resulting in a calculation using a 50% yield formula.  D.E. 228-3 at 15.  Defendant has not established any prejudice because he has not offered any proof or even argument as to a drug quantity calculation that, if presented, would have reduced the quantity to below 50 grams.  Defendant claims "there was no way labs could produce 100 percent," *id.*, but he offers no proof or explanation as to what he believes the properly calculated amount would be.  Defendant would still be subject to the statutory mandatory minimum sentence under 21. U.S.C. § 841(a)(1), meaning that his sentence could not be less than 240 months (the sentence he ultimately received).  Defendant's vague argument on such a technical issue fails to establish any prejudice.

In related Claims 24 and 25, Defendant claims that Mr. Coffey gave him incorrect advice by telling him that he could raise all sentencing issues on appeal, but did not preserve Defendant's sentencing issues for appeal.  Defendant did not waive his right to directly appeal or collaterally attack his sentence in the plea agreement.  *See* D.E. 187 at 2–3.  Mr. Coffey indeed told Defendant in a letter dated November 26, 2008 (prior to Defendant's rearraignment) that he was "allowed to raise all sentencing issues."  D.E. 240-3 at 4.  Defendant claims that Mr. Coffey failed to preserve sentencing issues for appeal, but he does not identify any unpreserved issue he would have raised that he believes to be meritorious.  Defendant states that he sent a letter to counsel (presumably Mr. Coffey) asking him to preserve issues for appeal, but he does not produce the letter, the contents of the letter, or otherwise enumerate what issues he asked Mr. Coffey to preserve for appeal. Thus, the Court cannot meaningfully assess the purported deficiency or resulting prejudice.  He therefore has failed to establish any deficiency by counsel or resulting prejudice.

By engaging in a very liberal construction of his memorandum, one can infer that Defendant would have wanted to preserve an objection to the drug quantity calculation in his pre-sentence report.  The lack of any prejudice concerning that claim is discussed above as to Claim 23.  One can also infer that Defendant would have wanted to preserve an objection to the United States's decision not to file a motion for downward departure under U.S. Sentencing Guidelines Manual § 5K1.1.  The futility of preserving that claim is discussed above as to Claim 22.  The only specific sentencing issues one can glean from Defendant's motion that he would have liked to preserve for appeal would have failed on appeal.  Thus, Defendant cannot show that Mr. Coffey's failure to preserve any sentencing issues prejudiced him.

### D.    Ground Two – Involuntary Plea Agreement

Defendant's second ground for relief listed in his 28 U.S.C. § 2255 motion is that his plea agreement was involuntary.  He makes the following claims in support of this ground:

26. Defendant was given incorrect legal advice by Mr. Kincer, causing Defendant to incriminate himself during debriefing with the Unites States, which ultimately denied Defendant a fair trial.  D.E. 228-3 at 20.

27. Mr. Kincer failed to subject the prosecution's case to meaningful adversarial testing. *Id.*

28. Defendant was housed a great distance from Mr. Kincer which led to a "very strenous [sic] burden communicating and speaking with defendant."  *Id.*

29. Defendant's experience of a prior trial in which Defendant's counsel did not begin investigating the case and preparing the trial until the evening before, coupled with "the fact that present counsel failed to investigate and prepare for trial played a major role in defendants [sic] involuntary plea."  *Id.*

30. Mr. Coffey told Defendant he could not go to trial because of information Defendant had given the government during debriefing.  *Id.* at 20–21.

31. Mr. Kincer left a debriefing session, did not take notes of the session, and this omission left Defendant "no way of defending" himself.  *Id.* at 21.

32. Mr. Coffey induced Defendant's plea by telling him that Assistant United States Attorney May "was good at her word."  *Id.*

33. Evidence was withheld from Defendant, including a surveillance video and evidence proving other evidence and statements were obtained in violation of Defendant's constitutional rights.  *Id.* at 22.

34. Defendant asserts that a guilty plea is not truly voluntary unless the defendant understands the law in relation to the facts and that he did not understand the law in relation to the facts because of counsel(s) ineffectiveness.  *Id.* at 21.

35. Counsel(s) did not investigate and put the prosecution's case to meaningful adversarial testing, and thus counsel(s) were not in a position to recommend a plea agreement to Defendant.  *Id* at 21–22.

36. Counsel(s) induced Defendant's plea by telling him he had valuable information to give the United States during debriefing, but neither counsel had discussed what Defendant knew before urging him to cooperate with the government.  *Id.* at 22.

37. Defendant asserts that "justice dictates that a claim of ineffective assistance of counsel in connection with the negotiation of a cooperation agreement cannot be barred by the agreement itself—the very product of the alleged ineffectiveness."  *Id.*

38. Assistant United States Attorney May induced Defendant to plead by telling him he could receive up to a 50% reduction of his sentence by providing substantial assistance. *Id.*

A guilty plea is valid if it is entered into knowingly, voluntarily, and intelligently. *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). In order for a guilty plea to be valid, the defendant needs to have knowledge of the "relevant circumstances and likely consequences" of his plea. *Brady v. United States*, 397 U.S. 742, 748 (1970). The district court is required to verify that a defendant's plea is voluntary per Federal Rule of Criminal Procedure 11. *United States v. Dixon*, 479 F.3d 431, 434 (6th Cir. 2007). Specifically, the district court must "verify that the defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged." *Id.* (citation omitted) (internal quotation marks omitted). Whether a plea is entered voluntarily and intelligently is determined under the totality of the circumstances. *Brady*, 397 U.S. at 749. A defendant "who expressly represents in open court that his guilty plea is voluntary may not ordinarily repudiate his statements thereafter." *United States v. Conley-Logan*, No. 12-5245, 2013 WL 59344, at *2 (6th Cir. 2013) (citations omitted) (internal quotation marks omitted).

Before addressing specific claims, the Court notes that Judge Reeves conducted a proper Rule 11 inquiry at Defendant's rearraignment. Judge Reeves began by asking Defendant (who was under oath) several questions to ascertain Defendant's competency, and asked Mr. Coffey if he had any reason to believe Defendant could not proceed with the rearraignment. D.E. 205 at 4–8. Defendant confirmed he received a copy of his indictment, discussed it with Mr. Coffey, and understood the charges against him. *Id.* at 8. Defendant also expressed satisfaction with the

advice and representation Mr. Coffey had given.  *Id.*  Defendant confirmed he had discussed his plea agreement with Mr. Coffey, that he understood the terms of the plea agreement, and that this was the only plea agreement that he had with the United States in this case.  *Id.* at 9–10.

Judge Reeves then asked Ms. May to review the plea agreement, and afterward both Mr. Coffey and Defendant confirmed that her summary was accurate.  *Id.* at 10–12.  Defendant confirmed that, other than what was stated in the plea agreement, no one made any promises to him to induce him to plead, and that no one had threatened or forced him to plead.  *Id.* at 12–13. Defendant also confirmed that no one had told him that he would receive a specific sentence in exchange for entering a guilty plea.  *Id.* at 13.

Judge Reeves then listed the rights that Defendant would lose if he pled guilty, and Defendant acknowledged that he understood.  *Id.*  Judge Reeves also reviewed the maximum penalties that could be imposed and the mandatory minimum sentence; again, Defendant indicated that he understood and affirmed that he had a prior felony drug conviction.  *Id.* at 13– 14.  Judge Reeves also explained to Defendant that he could be placed on supervised release and what could happen if Defendant violated any supervised release term.  *Id.* at 14.  Defendant acknowledged that he understood that as well.  *Id.*

Next, Judge Reeves explained how the Sentencing Guidelines would be applied in Defendant's case, and that while he was required to consider them, the Guidelines recommendation was not binding at sentencing.  *Id.* at 14–15.  Judge Reeves also explained to Defendant that no one would be able to tell Defendant what his Guidelines range was until the United States Probation Office prepared his Presentence Investigation Report;  Defendant acknowledged again that he understood.  *Id.* at 15.  Judge Reeves then explained that he would

be considering the 18 U.S.C. § 3553 factors and listed them for Defendant.  *Id.* at 16–17. Defendant stated that he understood that the Court could consider all of those factors.  *Id.*  at 17.

Moving on to the plea agreement, Judge Reeves explained to Defendant that he was waiving the right to appeal and collaterally attack his guilty plea and conviction.  *Id.*  Defendant stated he understood that he was waiving those rights.  *Id.* at 17–18.  Judge Reeves then asked Defendant if he understood that he would not be able to withdraw his plea agreement "if [Defendant's] attorney's prediction or [Defendant's] belief about [his] guideline range were to be incorrect."  *Id.* 18.  Again, Defendant indicated that he understood.  *Id.*  He affirmed that he understood when Judge Reeves explained that he would be bound by his plea agreement even if his sentence was more severe than he expected.  *Id.* at 18–19.  He also affirmed that he knew he could not withdraw from his guilty plea if the Court considered one or more factors from § 3553. *Id.*  Finally, Defendant affirmed that he understood that parole had been abolished in the federal system.  *Id.*

Judge Reeves then described the rights that Defendant would have if he continued to trial, and that he was waiving the same rights by entering a plea of guilty.  *Id.* at 19–21.  Defendant confirmed that he understood that he was giving up those rights by pleading guilty, and he stated that he understood that he could continue to trial and not plead guilty.  *Id.*  Judge Reeves asked Defendant several questions to determine whether there was a basis in fact for Defendant's plea. *Id.* at 21–22.  Finally, Judge Reeves asked if Defendant was entering a plea of guilty because he was in fact guilty of the offense charged, and Defendant confirmed that he was.  *Id.* at 22–23.

The record overwhelmingly establishes that Defendant fully understood the consequences of pleading guilty.  Having conducted a proper Rule 11 inquiry, Judge Reeves verified that

Defendant's plea was voluntary, and this ground of Defendant's motion fails.  Nevertheless, the Court will address each Claim in order to complete the record in case of objections.

The thrust of Claims 26 through 33, as well as Claims 35, 36, and 38 is that the pretrial period did not progress as Defendant might have liked.  Defendant more appropriately raised Claims 26, 27, 30, 31, 32, and 35 in his first ground for relief: ineffective assistance of counsel. Claim 26 is in fact Claim 1, Claims 27 and 35 are both Claim 16, Claim 30 is Claim 20, Claim 31 is Claim 2, and Claim 32 is Claim 21.  Because these claims were addressed in their previous forms and found not to constitute ineffective assistance of counsel sufficient to support a claim that Defendant would not have pled guilty in the absence of the alleged deficiencies, Defendant may not allege that they form a basis for the argument that his plea was involuntary.

Claim 36 is also an ineffective assistance of counsel claim, though Defendant did not raise it in his first ground for relief.  In order to successfully assert a claim of ineffective assistance of counsel, Defendant needs to prove both deficient performance and prejudice as required by *Strickland v. Washington* and *Hill v. Lockhart*.  Defendant's claim fails for lack of deficient performance.  Judicial scrutiny of counsel's performance is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 688, 689 (1984).  In this case, Mr. Kincer and Mr. Coffey's encouragement that Defendant participate in debriefing with the United States is neither surprising nor an example of deficient performance.  Given the weight of the evidence against Defendant, counsel seemingly made the reasonable decision to focus their efforts on sentence reduction.  One fairly common way for a defendant to reduce his sentence is to provide substantial assistance to the government by giving information about other crimes, in exchange for which the United States moves for a downward departure under U.S.

Sentencing Guidelines Manual § 5K1.1.  Advising Defendant to engage in debriefing under the circumstances of his case falls squarely within the wide range of reasonable professional assistance.  Thus, Defendant cannot assert this claim as the foundation for a claim that his entry into his plea agreement was involuntary due to ineffective assistance of counsel.  Additionally, for the reasons discussed above, Defendant has failed to establish any prejudice due to his proffered statements because he has not shown how a trial would have had a different result had he not participated in the proffer and pled guilty thereafter.

Claims 28, 29, 33, and 38 are claims that are irrelevant to whether or not Defendant's plea was involuntary.  Claim 28 is that Defendant was housed in a facility enough distance away from Mr. Kincer's office that Mr. Kincer raised the issue to Judge Reeves, stating that the distance was making it difficult for him to communicate with his client.  Defendant fails to explain how this fact has any bearing at all on the voluntariness of his plea.  Mr. Coffey was counsel for the Defendant when he accepted the plea agreement, not Mr. Kincer.  Because Defendant has not shown how his physical distance from Mr. Kincer rendered his plea involuntary, this claim fails.

Claim 29 relates that Defendant's prior experience of going to trial with unprepared counsel, coupled with alleged ineffective assistance of his counsel in this case, led him to enter into the plea agreement.  Defendant's personal history with the criminal justice system does not affect whether or not his plea was voluntary (except to support the inference that Defendant did understand the consequences of pleading guilty).  In order for a guilty plea to be valid, the defendant needs to have knowledge of the "relevant circumstances and likely consequences" of his plea.  *Brady v. United States*, 397 U.S. 742, 748 (1970).  Judge Reeves fully confirmed that this was the case during Defendant's rearraignment.

Claim 33 alleges that the United States failed to turn over to Defendant certain evidence that would have shown other evidence and statements were obtained in violation of Defendant's constitutional rights.  First, this claim fails because Defendant waived the right to collaterally attack his guilty plea in his plea agreement.  D.E. 187 at 2–3.  Even if that were not the case, Defendant makes no allegation as to the particulars of this evidence that he believes should have been disclosed, so the Court cannot meaningfully evaluate this claim.  Thus, this claim as to the involuntariness of Defendant's plea fails.

Claim 38 is that Defendant's plea was involuntary because Assistant United States Attorney May induced Defendant to plead by telling him he could receive up to a 50% reduction in sentence by providing substantial assistance to the government.   Again, this claim fails because Defendant waived the right to collaterally attack his guilty plea in his plea agreement.  D.E. 187 at 2–3.  But, if that were not the case, Defendant could not rely on this argument as a basis for an involuntary plea.  Defendant understood that he *could* receive up to a 50% reduction, not that he *would*.  Defendant's plea agreement also reflects the discretion solely held by the United States whether or not to move for a downward departure pursuant to U.S. Sentencing Guidelines § 5K1.1.  D.E. 187.  Defendant also affirmed at his rearraignment that no other promises had been made to him other than the ones contained in his plea agreement.  D.E. 205 at 12–13.  Given those facts, Defendant cannot allege that Assistant United States Attorney May's statement that Defendant *could* receive a downward departure of up to 50% of his sentence improperly induced Defendant's guilty plea.  Therefore, this claim fails.

Defendant's Claim 34 is without merit.  Defendant states that a guilty plea is not voluntary unless the defendant entering into the plea understands the law in relation to the facts, which Defendant did not due to ineffective assistance of counsel.  However, as stated above, the

necessary key for a valid guilty plea is that the defendant needs to have knowledge of the "relevant circumstances and likely consequences" of his plea. *Brady v. United States*, 397 U.S. 742, 748 (1970). The district court must "verify that the defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged." *United States v. Dixon*, 479 F.3d 431, 434 (6th Cir. 2007) (citation omitted) (internal quotation marks omitted). Judge Reeves read the sole count of the Indictment to Defendant prior to questioning him about the factual basis for his guilty plea. D.E. 205 at 21–22. In all respects, Judge Reeves's Rule 11 colloquy ensured the knowing nature of Defendant's plea. Thus, this claim fails.

Finally, for this ground, is Claim 37 in which Defendant asserts that "justice dictates that a claim of ineffective assistance of counsel in connection with the negotiation of a cooperation agreement cannot be barred by the agreement itself—the very product of the alleged ineffectiveness." Defendant is correct; in fact, that precise language appears in *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999). The Sixth Circuit agrees with the Defendant as well.

> [I]n cases where a defendant argues that his plea was not knowing or voluntary, or was the product of ineffective assistance of counsel . . . , it would be entirely circular for the government to argue that the defendant has waived his right to an appeal or collateral attack when the substance of his claim challenges the very validity of the waiver itself.

*In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007).

Though Defendant is correct regarding the law, Defendant is incorrect that this particular facet of the law applies to his case. As discussed in detail in both Ground 1 and this Ground, Defendant has *not* made a showing that he suffered from ineffective assistance of counsel.

Because Defendant has not made that showing, his statement of the law, though correct, is inapplicable to his case.  Thus, this final claim of Ground 2 fails.

### E.    Ground Three – Government Withheld Evidence

Defendant's third ground for relief is that the United States improperly withheld evidence used to find guilt and at sentencing from Defendant which would have been favorable to Defendant's case.  D.E. 228-3 at 23.  Defendant identifies several claims as the bases for Ground Three:

39. The government withheld a surveillance video that would have shown that the state law enforcement officers were viewing Defendant's curtilage.  D.E. 228-3 at 23.

40. Any evidence gathered from unconstitutional viewing of Defendant's curtilage should have been excluded as fruits of the poisonous tree.  *Id.*

41. By using the above-mentioned illegally obtained evidence from state and local law enforcement, the United States violated the "silver platter doctrine."  *Id.*

42. The United States withheld from Defendant the evidence presented in paragraphs 36–47 of the Presentence Investigation Report which formed the basis of attributing 218.4 grams of methamphetamine to Defendant (D.E. 193 at 9–11).  D.E. 228-3 at 23.

43. Defendant asserts he had the right to see the evidence described in Claims 39, 40 and 42 prior to entering into his guilty plea.  *Id.*

44. Defendant states that he should "be allowed to show taint because to withhold from defendants [sic] defense the means or tools to meet burden is to create absurdity in the law."  D.E. 228-3 at 24.

"[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective

of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The Supreme Court subsequently held that a request by the defendant is not necessary to trigger the United States's duty to disclose such evidence, and that the duty to disclose extends to impeachment as well as exculpatory evidence. *Strickler v. Greene*, 527 U.S. 263, 280 (1999).

Guilty pleas have a very specific effect on *Brady* claims and other non-jurisdictional defects alleged to have occurred prior to the plea. After a defendant pleads guilty in open court, he cannot later "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 277 (1973). In short, because Defendant knowingly and voluntarily entered into a plea agreement, he may not raise any non-jurisdictional claims that his constitutional rights were violated prior to his plea agreement. Claims 40 through 44 are all barred by Defendant's guilty plea.

Even if that were not the case, Claims 40 and 41 fail because viewing the Defendant's curtilage from an open field is not a search under the Fourth Amendment. *United States v. Hatfield*, 333 F.3d 1189, 1198 (10th Cir. 2003). Even if law enforcement officers had to trespass onto Defendant's property to view the curtilage from an open field, it would still not constitute a search under the Fourth Amendment. *Id.* at 1198–99. Because law enforcement officers did not violate Defendant's Fourth Amendment rights by viewing his curtilage from an open field, these claims must fail.

Claim 42 also fails. Defendant stated during his rearraignment that he and his co-defendants "conspired knowingly and willingly to manufacture methamphetamine, at least 50 grams." D.E. 205 at 21–26. This statement was made prior to his review of the Presentence Investigation Report, but Defendant knowingly, voluntarily, and intelligently pled guilty after Judge Reeves read the sole count of the indictment, and Defendant even indicated that the

quantity "was at least 50." D.E. 205 at 22. No matter what amount of methamphetamine was attributed to him at sentencing over and above the minimum 50 grams to which he pled, Defendant was still subject to the sentence he received—a mandatory minimum sentence of 20 years pursuant to 21 U.S.C. § 841(b)(1)(A) given the Notice of Penalty Enhancement filed by the United States pursuant to 21 U.S.C. § 851 (D.E. 75). Numerous courts have held that plea agreements were knowingly and intelligently entered into even when a particular defendant was unaware how severely he would be sentenced. *See, e.g.*, *United States v. Wilhite*, 929 F.2d 702 (6th Cir.1991) ("Concerns for due process do not require that a criminal defendant be placed on advance notice of the application of a career offender sentence under Guideline 4B1.1, so long as the defendant has, as he was in the instant case, been afforded an adequate opportunity to challenge the factual basis for applying the enhancement."); *United States v. Stephens*, 906 F.2d 251, 254 (6th Cir.1990) ("Because appellant was fully aware that his ultimate sentence under the agreement was subject to later determination by the court based on a variety of factors at the time he entered into it, the fact that he did not know specifically that he would be subject to sentencing in [a particular] range does not mean that it was entered into unknowingly and unintelligently.")

Moreover, a *Brady* violation involves *exculpatory* evidence. Defendant does not claim that exculpatory evidence was withheld from him; rather, he objects that evidence of his guilt was withheld from him. "[T]he prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." *United States v. Bagley*, 473 U.S. 667, 675 (1985). Defendant has not made a cognizable *Brady* claim, and thus, even if such a claim were not barred by

40

Defendant's guilty plea, Claims 39, 40, and 42 would still fail on that ground.  Claim 43 also fails for the same reasons as it is entirely derivative of Claims 39, 40, and 42.

Finally, Claim 44 fails for lack of specificity.  Defendant does not identify what he alleges to be tainted.  Therefore, this claim also fails.

## F.       Ground Four – Government Misconduct

Defendant's fourth ground for relief is that the United States engaged in various forms of misconduct.  D.E. 228-3 at 25.  Defendant identifies several claims as the bases for Ground Four:

45. The government failed to turn over to Defendant all discovery evidence, some of which was used to find guilt and used for sentencing, some of which would have been favorable to Defendant, specifically the previously mentioned surveillance video and evidence in the Presentence Investigation Report charging Defendant with manufacturing 218.4 grams of methamphetamine.  D.E. 228-3 at 25–26.

46. Agent Chris Edwards was pursuing a romantic relationship with Defendant's girlfriend, Kim Boggs.  *Id.* at 26.

47. The state probation officer assigned to Defendant did not revoke Defendant's probation after Defendant failed several drug tests.  *Id.*

48. Law enforcement officials violated Defendant's constitutional rights via "illegal arrest, illegal detention, illegal search, pretext arrest, exploratory search, and violated defendants [sic] expectation of privacy."  *Id.*

49. Evidence obtained illegally by state and local law enforcement officials were given to the federal government to use against Defendant in violation of the silver platter doctrine and the fruit of the poisonous tree doctrine. *Id.*

50. Agents Edwards and Adams threatened Kim Boggs that her son would be taken away from her which coerced her into making false statements. *Id.*

51. The Assistant United States Attorney plea bargained in bad faith by telling Defendant and defense counsel that she did not have the authority to withdraw the notice filed under 21 U.S.C. § 851 that Defendant had previously been convicted of a drug felony. *Id.*

52. The Assistant United States Attorney also plea bargained in bad faith by giving Defendant the impression that she would file a motion under 18 U.S.C. § 3553(e) for Defendant providing substantial assistance to the government, knowing all along that she would not file such a motion. *Id.* at 26–27.

53. The Assistant United States Attorney acted in bad faith by leading Defendant to believe that he had provided substantial assistance and would be testifying before a grand jury before sentencing. *Id.* at 27.

54. At sentencing, the Assistant United States Attorney raised the possibility of reducing Defendant's sentence pursuant to Federal Rule of Criminal Procedure 35(b) if Defendant's information in fact proved to be substantial assistance, but Defendant has heard nothing from the Assistant United States Attorney since. *Id.*

55. The Assistant United States Attorney acted in bad faith by not pursuing the leads and information given to her by Defendant during debriefing, despite the fact that there was corroborating evidence. *Id.*

56. The Assistant United States Attorney interfered with the attorney-client relationship between Defendant and Mr. Kincer when she suggested during a debriefing that she could turn on the speakerphone so that Mr. Kincer could leave to check his post office box. *Id.*

57. The Assistant United States Attorney violated Defendant's right to effective assistance of counsel by suggesting that Mr. Kincer could listen to the debriefing while he checked his post office box. *Id.* at 28.

58. Agent Adams told Defendant twice that "he would see to it that defendant got life in prison" and threatened Defendant after Defendant said he had no information to give the agent. *Id.* at 27–28.

Claim 45 is a duplicate claim of Defendant's Claims 39 and 42, discussed above.  For the reasons discussed in those claims, Claim 45 fails.  Similarly, Claims 48, 49, and 50 are claims of non-jurisdictional constitutional defects made prior to a guilty plea.  "[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."  *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  Again, because Defendant knowingly and voluntarily entered into a guilty plea, he may not raise any non-jurisdictional claims that his constitutional rights were violated prior to doing so.  Claims 48, 49, and 50[3] are thus barred.

---

[3] Claim 50 is also barred because Defendant does not have standing to challenge the statements of another.  If Ms. Boggs's statements were in fact coerced, only Ms. Boggs has direct standing to contest them as a violation of her Fifth Amendment or Due Process rights.

Defendant states in Claim 46 that Agent Chris Edwards was pursuing a romantic relationship with Defendant's girlfriend, Kim Boggs, and that this constituted government misconduct. Other than his statement that Ms. Boggs told Defendant that Agent Edwards wished to date Ms. Boggs, Defendant has provided no other proof. Without further proof, or an allegation of how such a fact had an impact Defendant's guilty plea or sentence, this claim fails.

In Claim 47, Defendant states that the state probation officer tasked with oversight of Defendant did not revoke his probation despite numerous failed drug tests on Defendant's part. Defendant claims that the reason for this behavior is that the government wanted Defendant to continue his illegal activities in order to further investigate him, something they could do not if he were incarcerated. As with Claim 46, Defendant has not provided any proof of this assertion. He has also failed to cite any law showing that such an action would constitute government misconduct so as to entitle him to habeas relief.

Claim 51 fails as well for many reasons. First, it is so conclusory that it defies meaningful substantive evaluation. Second, whether Assistant United States Attorney Mays did or did not have the authority to withdraw an enhancement under 21 U.S.C. § 851, she had no obligation to do so. 21 U.S.C. § 851(c) provides a mechanism for Defendant to contest such an enhancement by filing "a written response to the information [of a prior conviction]." The United States would have been given the opportunity to respond, and the Court would then have held a hearing on the matter. Defendant raised this issue with Mr. Coffey apparently more than once. In his letter to Defendant dated February 8, 2009, Mr. Coffey asks Defendant several questions regarding the prior conviction, including whether Defendant had an order reflecting that the felony charge was dismissed or amended to a misdemeanor, and whether Defendant had additional information about the conviction that was previously undisclosed to Mr. Coffey. D.E.

240-3 at 22.  Defendant and Mr. Coffey clearly discussed the issue, but did not avail themselves of § 851(c).  If Defendant objected to an enhancement under 21 U.S.C. § 851, it was his obligation to raise the objection, not Ms. May's.  Thus, Claim 51 fails.

As to Claim 52, Defendant's assertion that Assistant United States Attorney May never intended to file a motion for downward departure under 18 U.S.C. § 3553(e) is contravened by the record.  Indeed, Ms. May's actions indicate her willingness to file such a motion in the event that substantial assistance was given.  She included a provision stating as much in Defendant's plea agreement (D.E. 187), and stated at sentencing that the United States continued to hope that the information given by Defendant would be useful, even stating that a sentence reduction under Federal Rule of Criminal Procedure 35 might be possible (D.E. 207 at 9).  Ms. May's actions show her willingness to file for a downward departure or sentence reduction under the correct circumstances, which simply were not met.  If Defendant had shown that Ms. May did not make such a motion because of an unconstitutional motive, such as race, Defendant might have presented a meritorious claim.  *United States v. Austin*, No. 97-4197, 2000 WL 32017, at *5 (6th Cir. Jan. 4, 2000).  However, Defendant did not, and thus, this claim fails.

Claim 53 is much the same as Claim 52.  Ms. May stated at sentencing that she did talk to Defendant about the possibility of going before a grand jury prior to sentencing, but that "we're not able to do that until we have narrowed down the possible targets of such investigation.  Otherwise, it would not be helpful to put him in front of a grand jury at this time."  D.E. 207 at 9.  Again, her statements show a willingness to take Defendant before the grand jury, but not until his information proved to be of substantial assistance.  This is well within the discretion left to her by Defendant's plea agreement.  D.E. 187.  Defendant has not shown bad faith on the part of Ms. May, and so this claim fails as well.

45

Claim 54 is, again, much the same as Claims 52 and 53.  Ms. May did in fact mention the "possibility of the Rule 35" at sentencing.  D.E. 207 at 9.  Ms. May did not promise that Defendant's assistance was substantial; she merely stated that if the investigation of information given by Defendant led to a situation where Defendant's testimony before a grand jury would be helpful, application of Rule 35 would be a possibility.  Because the decision whether a defendant has rendered substantial assistance is within the United States's discretion per Defendant's plea agreement, Ms. May has not acted in bad faith by not moving for a sentence reduction under Federal Rule of Criminal Procedure 35.  Thus, this claim fails.

As to Claim 55, Defendant is not in a position to ascertain what the government has and has not done with the information he provided to Ms. May during debriefing sessions.  The Court infers that Defendant assumes the information he provided has not been pursued because the United States has not filed a Rule 35 motion or other sentence-reducing motion based on substantial assistance.  However, it is possible that Ms. May and her colleagues followed up on Defendant's information to the fullest extent and simply did not receive substantial assistance based on that information.  In either case, Defendant does not have the requisite access to the decision-making apparatus of the United States Attorney's office in order to establish what has and has not been done by that office.  Therefore, Claim 55 fails.

Claims 56 and 57 are related.  They are that the Assistant United States Attorney interfered with the attorney-client relationship between Defendant and Mr. Kincer (Claim 56) and violated Defendant's right to effective assistance of counsel (Claim 57) when she suggested during a debriefing that she could turn on the speakerphone so that Mr. Kincer could leave to check his post office box.  Claim 56 is vague and conclusory, and Claim 57 has already been discussed by the Court in Claim 2.

Claim 56 is too vague to be meaningfully assessed.  Defendant does not specify in what way Ms. May's encouragement to Mr. Kincer to attend the debriefing by phone interfered with their attorney-client relationship.  Defendant was not prevented from consulting with his attorney, nor was his attorney excluded from the debriefing.  The Court has already analyzed the claim that Mr. Kincer's phone attendance in this instance constituted ineffective assistance of counsel, and found that claim to be without merit.  Because Defendant has not alleged in what way the attorney-client relationship between himself and Mr. Kincer was disturbed, other than a claim of ineffective assistance of counsel which the Court has analyzed and found baseless, Claim 56 fails.  Claim 57 is a reiteration of Claim 2, which this Court concluded did not constitute a successful claim of ineffective assistance of counsel.  Therefore, Claim 57 fails as well.

Finally, for this Ground, Claim 58 alleges that Agent Adams told Defendant twice that "he would see to it that defendant got life in prison" and threatened Defendant after Defendant said he had no information to give the agent.  Defendant has not alleged why this constitutes government misconduct or denied him any right.  Claim 58 therefore fails.

### G.      Ground Five – Sentencing Issues

Defendant's fifth ground for relief is that there were impermissible flaws in the determination of Defendant's sentence.  D.E. 228-3 at 29.  Defendant identifies the following as the bases for Ground Five:

59. Mr. Coffey provided ineffective assistance of counsel when he failed to preserve Defendant's sentencing issues for appeal.  D.E. 228-3 at 29.

60. Mr. Coffey provided ineffective assistance of counsel when he failed to investigate and object to the quantity of drugs attributed to Defendant.  *Id.*

61. Mr. Coffey provided ineffective assistance of counsel when he failed to have the ratio used to determine drug quantity yield from a methamphetamine lab reduced, which would have reduced Defendant's drug quantity overall and led to a lesser sentence. *Id.*

62. Mr. Coffey provided ineffective assistance of counsel by not arguing that Defendant was a minor or minimal participant in the conspiracy. *Id.* at 30.

63. Mr. Coffey provided ineffective assistance of counsel by not asking for an evidentiary hearing regarding the question of whether the government breached the plea agreement. *Id.*

64. The District Court should have sua sponte held an evidentiary hearing to determine whether or not the government breached the plea agreement. *Id.*

65. The District Court failed to correctly ascertain the quantity of drugs attributable to Defendant based on what quantity he could reasonably foresee as the outcome of the conspiracy. *Id.* at 29.

66. The District Court failed to address any of the issues raised by Defendant in his letter to the Court proceeding sentencing, wherein Defendant listed several issues that he could not get resolved prior to sentencing. *Id.* at 31.

As an initial matter, Defendant did not waive his right to appeal or collaterally attack his sentence in his plea agreement. *See* D.E. 187 at 2–3. However, all of Defendant's claims under this Ground fail for various reasons.

Claims 59, 61, and 63 were all raised more properly in Defendant's first Ground: ineffective assistance of counsel. Claim 59 is in fact Claim 25, Claim 61 is Claim 23, and Claim 63 is Claim 22. The Court has previously addressed the flaws in these claims.

Claim 60 would have been more appropriately raised in Defendant's first Ground, as it is an ineffective assistance of counsel claim.  The first issue raised by Defendant in this claim is that Mr. Coffey did not investigate the quantity of drugs attributed to Defendant, presumably contending that a lower quantity would have been attributable to him.  Defendant claims prejudice in that co-defendant Johnson successfully objected to his quantity of methamphetamine being calculated on a 100% yield, resulting in the utilization of a 50% yield formula.  D.E. 228-3 at 15.  Defendant has not established any prejudice because he has not offered any proof or even argument as to a drug quantity calculation that, if presented, would have reduced the quantity to below 50 grams.  Thus, Defendant would still be subject to the statutory mandatory minimum sentence under 21. U.S.C. § 841(a)(1), meaning that his sentence could not be less than 240 months (the sentence he ultimately received).  Defendant's vague argument on such a technical issue fails to establish any prejudice.

Additionally, Defendant stated during his rearraignment that he and his co-defendants "conspired knowingly and willingly to manufacture methamphetamine, at least 50 grams."  D.E. 205 at 21–26.  This statement was made prior to his review of the Presentence Investigation Report, but Defendant knowingly, voluntarily, and intelligently pled guilty after Judge Reeves read the sole count of the indictment, and Defendant even indicated that the quantity "was at least 50."  D.E. 205 at 22.  Defendant contends a proper investigation had a "high probability" of reducing the drug quantity to below 50 grams, but he offers no explanation of why that is the case or evidence in support.  The Court will not speculate as to such facts given Defendant's solemn declaration under oath that the conspiracy involved "at least 50" grams.  "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are

contentions that in the face of the records are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Finally, Defendant received the ***statutory minimum*** sentence for the charge to which he knowingly pled guilty. Defendant has failed to establish any legitimate claim to § 2255 relief.

As to the allegation that Mr. Coffey did not object to the drug quantity, Mr. Coffey states in his affidavit that "based on the review of the discovery there was no basis for the objection." D.E. 240-1 at 4. Mr. Coffey communicated as much to Defendant in a letter dated March 2, 2009, when he stated that he did not object to the drug quantity in the Presentence Investigation Report because "it appears the government can meets its burden of proof on this point." D.E. 240-4 at 24. Mr. Coffey also explained to Defendant it was possible that the level could actually be higher if the historical information in the Presentence Investigation Report had been included, and that objecting to the drug level might illuminate that fact for the government, leaving Defendant in a worse position than if he had never objected at all. *See* D.E. 240-4 at 28–29. Given these facts, Mr. Coffey's decision was well within the bounds of sound professional advice. Therefore, Mr. Coffey's refusal to object to the drug quantity listed in the Presentence Investigation Report did not constitute ineffective assistance of counsel. Claim 60 fails.

Claim 62 is that Mr. Coffey was ineffective for not arguing that Defendant was a minor or minimal participant in the conspiracy. Mr. Coffey successfully objected to the categorization of Defendant as a leader or organizer of the conspiracy. D.E. 206 at 4–5. Thus, the record demonstrates that counsel effectively addressed the nature of Defendant's role in the conspiracy instead of ineffectively as Defendant contends. Moreover, again, Defendant received the statutory minimum sentence for the sole count of conviction, and his argument as to drug quantity raises no issue that could potentially give rise to an ability to sentence below the

minimum pursuant to 18 U.S.C. § 3553(e).  In sum, Defendant cannot establish any prejudice on this claim.  Therefore, Claim 62 fails.

In Claim 64, Defendant states that the District Court should have sua sponte held an evidentiary hearing to determine whether or not the government breached the plea agreement. Given the rest of Defendant's Motion, the Court infers that Defendant believes Judge Reeves should have sua sponte held an evidentiary hearing to determine whether or not the government breached the plea agreement when Ms. May did not move for a downward departure under U.S. Sentencing Guidelines Manual § 5K1.1.

As discussed in Claim 22, touched upon in Claim 25, and discussed again in Claim 38, in the plea agreement Ms. May reserved the right to determine whether or not Defendant had provided substantial assistance.  *See* D.E. 187.  Because Ms. May had that discretion under the plea agreement, it would have been inappropriate for Judge Reeves to hold such a hearing, and, even if he had, no relief could have been granted to Defendant.  Therefore, Claim 64 fails.

Claims 65 and 66 state that the District Court failed to perform certain actions.  In Claim 65, Defendant states that the District Court failed to correctly ascertain the quantity of drugs attributable to Defendant based on what quantity he could reasonably foresee as the outcome of the conspiracy.  However, the only evidence presented to Judge Reeves at sentencing was the Presentence Investigation Report and its quantity of drugs attributed to Defendant.  Defendant did not object to the Presentence Investigation Report's quantity, and thus did not put on proof at sentencing showing that the amount listed in the Presentence Investigation Report was erroneous.  *See* D.E. 206.  Nor does he offer any such proof at this point.  Because the only evidence that was before Judge Reeves was the Presentence Investigation Report, he correctly used that quantity in determining Defendant's sentence.  Thus, Claim 65 fails.

51

Claim 66 states that the District Court failed to address any of the issues raised by Defendant in his letter to the Court proceeding sentencing, wherein Defendant listed several issues concerning purported ineffective assistance of counsel that he could not get resolved. But, Defendant's letter was addressed at sentencing by Mr. Coffey and Judge Reeves. Mr. Coffey stated he had received Defendant's letter, talked to Defendant, that Defendant wanted Mr. Coffey to represent him during sentencing, and that Defendant did not intend to withdraw his plea. D.E. 206 at 3–4. The letter does not indicate an intention to withdraw the guilty plea, instead it focuses upon claims of ineffective assistance of counsel. D.E. 185. Ordinarily courts "will not review a claim of ineffective assistance of counsel on direct appeal because the record is usually insufficient to permit an adequate review of such a claim." *United States v. Gardner*, 417 F.3d 541, 545 (6th Cir. 2005). The record pre-trial or pre-plea is even less sufficient, and is not a proper forum for an ineffective assistance of counsel claim. Therefore, even if Judge Reeves had specifically addressed the substance of Defendant's letter, no relief could have been afforded to Defendant. Thus, Claim 66 also fails.

### H.    Ground Six – Prior Conviction Did Not Qualify as Sentence Enhancer

Defendant's sixth ground for relief is that the prior conviction used to enhance his sentence under 21 U.S.C. §§ 841 and 851 did not qualify to be used a sentence enhancer. Defendant presents a number of claims forming the bases of this Ground:

67. There was a constitutional infirmity in the prior conviction that disqualified it as a sentence enhancer, specifically, that the plea was involuntary. D.E. 228-3 at 32.

68. Mr. Coffey was ineffective for failing to investigate the prior sentence and therefore failed to discover it was "less than the five year limitation" and "Defendant never served the one year limit that decides if an enhancement is appropriate." *Id.*

52

69. Mr. Coffey was ineffective for failing to object to the use of the prior sentence as a sentence enhancer in this case. *Id.*

70. The prior conviction and its eligibility as a sentence enhancer should be considered based on the original sentence imposed (probation), not the sentence imposed upon revocation of that probation. *Id.*

Claim 67 alleges that the conviction used to enhance Defendant's sentence under 21 U.S.C. §§ 841 and 851 was invalid because the conviction was the result of an involuntary guilty plea. Defendant states that he was told he would receive only a probationary sentence, and that this made the plea involuntary. D.E. 228-3 at 32. Defendant received a three-year sentence that was suspended for three years with an order that Defendant complete drug court after being convicted of Possession of a Controlled Substance, 1st Degree. D.E. 238 at 23. Defendant would eventually violate the terms of his participation in drug court and serve "around 7 months" of incarceration. D.E. 228-3 at 32. Defendant has alleged that his plea in that case was involuntary because he was promised probation. Defendant has not alleged who made that promise to him, nor has Defendant offered other circumstances surrounding the case.

Defendant's claim fails because of the existence of 21 U.S.C. § 851(e). That subsection provides that a defendant may not "challenge the validity of any prior conviction alleged under this section which occurred more than five years before the date of the information alleging such prior conviction." 21 U.S.C. § 851(e). The Sixth Circuit has applied this plain language in the § 2255 context, holding that failure of defense counsel to challenge the validity of a state conviction that occurred more than five years before the government filed its information did not constitute ineffective assistance of counsel because the challenge would have been barred by

§ 851(e).  *Wright v. United States*, 238 F.3d 426, 2000 WL 1827861, at *2 (6th Cir. 2000) (Table) (citing *United States v. Jenkins*, 4 F.3d 1338, 1343 (6th Cir. 1994)).

On April 28, 2008, the United States properly filed a notice of sentence enhancement with the Court and served a copy on defense counsel (D.E. 75) as required by 21 U.S.C. § 851(a)(1).  The prior offense listed in the notice occurred "on about August 30, 2001," D.E. 193 at 21, more than five years before the United States filed its notice.  Thus, Defendant was barred from challenging the validity of the prior conviction, and his claim to § 2255 relief has no merit.

This claim also fails because it is procedurally defaulted.  A federal prisoner's failure to raise a claim on direct appeal, excepting claims of ineffective assistance of counsel, results in a procedural default of that claim.  *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001).  A procedurally defaulted claim may nonetheless obtain review if the prisoner can show cause to excuse his failure to raise the claim on direct appeal and actual prejudice resulting from the alleged violation.  *Bousley*, 523 U.S. at 622; *Peveler*, 269 F.3d at 698–700.  If the prisoner fails to establish cause, it is unnecessary to determine if he was prejudiced.  *Bousley*, 523 U.S. at 623.  Defendant did not waive his right to appeal sentencing issues in his plea agreement.  *See* D.E. 187 at 2–3.  Defendant has not offered cause for why he did not raise this issue on direct appeal, nor could he show prejudice given 21 U.S.C. § 851(e).  This claim fails due to procedural default.

Claims 68 and 69 are ineffective assistance of counsel claims that would have been more appropriately raised in Ground 1 of Defendant's Motion.  They claim that Mr. Coffey was ineffective for failing to investigate the prior sentence and for failing to object to the use of the prior sentence as a sentence enhancer in this case.  Claim 68 is based on a false premise: Mr. Coffey in fact exchanged a number of letters with Defendant in an attempt to keep Defendant

informed regarding this enhancement and to glean information about the prior conviction from Defendant, and had "discussed the matter in detail." *See* D.E. 240-1 at 3–4; 240-3 at 13–15, 22. As Mr. Coffey correctly points out, Defendant "was the person that attended drug court," D.E. 240-3 at 22, meaning that Defendant was in the best position to know if the charges had been amended down from a felony to a misdemeanor or if a defect occurred during the proceedings. The record reflects an adequate investigation, therefore Defendant has not shown deficient performance. Finally, Claim 68 fails because had Mr. Coffey investigated the prior conviction, it would have made no difference because an objection to its validity would be barred by 21 U.S.C. § 851(e) as discussed above. Therefore, since Defendant can show neither deficient performance nor prejudice, Claim 68 fails.

Claim 69 fails as well. Because Defendant seemingly did not provide Mr. Coffey with information helpful to an objection to the sentence-enhancing conviction, Mr. Coffey would not have had a reasonable basis to make the motion. "[C]ounsel's failure to raise futile objections and arguments does not amount to constitutionally deficient performance." *Lyons v. Caruso*, 202 F.3d 269 (6th Cir. 1999) (Table). Raising such an objection without basis in fact would not only make the objection futile, but frivolous as well. Indeed, under such circumstances, it would have been improper for counsel to raise an unsupported objection. Thus, Mr. Coffey's decision not to object to the sentence-enhancing conviction did not constitute deficient performance, and Claim 69 fails.

Finally, in Claim 70 Defendant alleges that the prior conviction and its eligibility as a sentence enhancer should be considered based on the original sentence imposed in that case, specifically probation, instead of the sentence imposed when the probation was revoked. Defendant misunderstands 21 U.S.C. §§ 841 and 851. His underlying offense was possession of

a controlled substance in the first degree which carries with it a maximum term of three years of incarceration under Kentucky law.  KRS § 218A.1415.  Kentucky classifies an offense with a maximum term of three years of incarceration as a Class D felony.  KRS § 532.020.  Thus, Defendant was convicted of a felony drug offense as defined under federal law.  *See* 21 U.S.C. § 802(44).  While Defendant's sentence was suspended and he was ordered to drug court, the penalty enhancement does not hinge upon the fact that Defendant violated the conditions of drug court and served 7 months; it hinges upon the nature of Defendant's prior conviction.  Thus, Defendant's claim is irrelevant, as the conviction's eligibility as a sentence enhancer was properly based on the nature of the underlying offense.

I.     **Ground Seven – Defendant Had No Reasonably Foreseeable Outcome of Drug Quantity Attributed to Him in This Case**

Defendant's seventh ground for relief is that the drug quantity attributed to him in this case was incorrect because the outcome of the criminality of his co-conspirators was not reasonably foreseeable to him.  D.E. 228-3 at 33–35.  Defendant bases this Ground on several claims:

71. It is "highly probable" that the drug quantity attributed to Defendant would have been less than 50 grams if both counsel had properly investigated the case and put the prosecution's case to meaningful adversarial testing.  D.E. 228-3 at 35.

72. The government did not present evidence that Defendant could reasonably foresee the amount of drugs found during the search of Kim Boggs's vehicle on February 16, 2006.  *Id.* at 33.

73. Defendant would have successfully refuted the 53.006 grams of methamphetamine attributed to him based on the search of the car he was driving on February 16, 2006.  *Id.*

56

74. Defendant would have successfully refuted the 69.7 grams of methamphetamine attributed to him arising from the search of his property on February 16, 2006.  *Id.*

75. Defendant would have successfully refuted the 218.4 grams of methamphetamine attributed to him arising from the arrest of Bonnie White and Kyle Johnson on March 14, 2006, in part because White and Johnson "were no longer involved" with Defendant.  *Id.* at 34.

76. The evidence attributed to Defendant in Claims 72 and 73 was obtained in violation of Defendant's constitutional rights.  *Id.*

77. The statements and evidence obtained on or around January 12, 2007, were obtained in violation of Defendant's constitutional rights.  *Id.*

78. The drug quantity attributed to Defendant should have been calculated at a 30% yield ratio instead of a 100% yield ratio.  *Id.*

79. Defendant was on house arrest at his parents' house at the time of the conspiracy and so could not have reasonably foreseen the amount of methamphetamine attributed to him by the activities of his co-conspirators.  *Id.* at 35.

Claim 71 is an ineffective assistance of counsel claim that would have been more properly raised in Defendant's Ground One.   Defendant contends that neither counsel investigated the case or put it to meaningful adversarial testing, and that if they had, it is highly probable that less than 50 grams of methamphetamine would have been attributed to Defendant. Given Defendant's clear declaration under oath that the conspiracy involved "at least 50 grams," D.E. 205 at 21, and that Defendant received the statutory mandatory minimum sentence, if construed as ineffective assistance claims, Defendant cannot show any prejudice. Again, "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent

57

presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the records are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Defendant's additional claims in support of this ground, although described as "sentencing" issues, essentially give rise to two possibilities. First, that the true quantity attributable to him was below 50 grams. Second, Defendant could be arguing that the quantity determination at sentencing was too high, resulting in an inflated Guidelines base offense level.

To the extent that Defendant claims that less than 50 grams of methamphetamine is properly attributable to him to sustain his conviction, such a claim is barred by his plea agreement wherein he waived the right to collaterally attack his conviction. D.E. 187 at 2–3. It is also barred by the fact that he admitted under oath in open court that he conspired with others to manufacture at least 50 grams of methamphetamine. D.E. 205 at 21.

To the extent that Defendant claims less methamphetamine would have been attributed to Defendant for purposes of sentencing, such claims fail. Claims 72 through 75 as well as 79 are all claims that Defendant would have "overcome" a certain quantity of methamphetamine attributed to Defendant for sentencing purposes. These claims are procedurally defaulted. A federal prisoner's failure to raise a claim on direct appeal, excepting claims of ineffective assistance of counsel, results in a procedural default of that claim. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001). A procedurally defaulted claim may nonetheless be reviewed if the prisoner can show cause to excuse his failure to raise the claim on direct appeal and actual prejudice resulting from the alleged violation. *Bousley*, 523 U.S. at 622; *Peveler*, 269 F.3d at 698–700. If the prisoner fails to establish cause, it is unnecessary to determine if he was prejudiced. *Bousley*, 523 U.S. at 623.

Because Defendant has not established cause for why he failed to raise these claims regarding drug quantity on direct appeal, these claims fail.

These claims, as well as Claim 78 (which states that Defendant's yield ratio should have been 30% instead of 100%), are also pointless because Defendant faced a statutory mandatory minimum of 240 months of incarceration.   The drug quantity attributed to him yielded a Guidelines range of 188 to 235 months, and Defendant was sentenced to the mandatory minimum of 240 months, which is above his Guidelines range.  If Defendant's drug quantity were reduced for Guidelines purposes, his mandatory statutory minimum would still remain and Judge Reeves would have had no discretion to sentence Defendant below that minimum term. Thus, these claims fail.

Claims 76 and 77 are barred by the rule stated in *Tollett*: After a defendant pleads guilty in open court, he cannot later "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 277 (1973).  Claims 76 and 77 allege violations of Defendant's constitutional rights prior to pleading guilty, and thus these claims fail.

## J.  Ground Eight – Errors at Rule 11 Inquiry

Defendant's eighth ground for relief is that there were impermissible errors during his Rule 11 inquiry that rendered his plea invalid.  Defendant cites a number of bases for this Ground:

80. The Court failed to ask Defendant if he was satisfied with Mr. Kincer's representation.  D.E. 228-3 at 36.

81. The Court failed to ask Defendant if he affirmed the prior felony drug offense conviction used to enhance his sentence.  *Id.*

82. The Court failed to specifically ask about the prior felony drug conviction used to enhance Defendant's sentence though Defendant had more than one drug conviction. *Id.*

83. Mr. Coffey was ineffective for not bringing Mr. Kincer's ineffective assistance to the attention of the Court. *Id.*

Claims 80 through 82 concern errors at Defendant's Rule 11 inquiry before Judge Reeves at Defendant's sentencing.

> A district court, in accordance with Rule 11 of the Federal Rules of Criminal Procedure, must verify that the defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged.

*United States v. Dixon*, 479 F.3d 431, 434 (6th Cir. 2007) (citation omitted) (internal quotation marks omitted).  The Court has already reviewed the colloquy given by Judge Reeves at Defendant's rearraignment and found it to fully be in conformity with Rule 11 (*see* discussion of Ground 2 above).  However, the Court considers these claims independently in order to complete the record in case of objections.

Defendant's first Claim in this Ground, Claim 80, is that the Court was obligated to ask if Defendant was satisfied with Mr. Kincer's representation, though Mr. Coffey was counsel of record at that time.  Defendant cites no case law for the proposition that Judge Reeves was required to inquire about Defendant's satisfaction with previous counsel in addition to that of replacement counsel.  As discussed in Ground One, all of Defendant's claims against Mr. Kincer could be cured by Mr. Coffey or did not meet the dual prongs of deficient performance and prejudice according to *Strickland v. Washington*, 466 U.S. 668 (1984).  Because Defendant fails

to cite any authority for the proposition that Judge Reeves had an obligation to inquire about Defendant's satisfaction with Mr. Kincer, this claim fails.

Claims 81 and 82 are related and state together that Judge Reeves did not get affirmation from Defendant regarding the specific conviction used to enhance his sentence which caused Defendant to erroneously affirm the prior conviction used.  At Defendant's rearraignment, Judge Reeves asked Defendant to affirm his prior felony drug conviction.

| THE COURT: | The maximum statutory punishment for the offense charged in the indictment would be a term of imprisonment for not less than 20 years, nor more than life, and that's called a mandatory minimum in this case.  And that's by virtue of the prior felony conviction that you have acknowledged.  And you do acknowledge that you have a prior drug felony conviction; is that accurate? |
|---|---|
| THE DEFENDANT: | Yes, sir. |

D.E. 205 at 13–14.  Defendant offers no support for his contention that Judge Reeves should have further specified the details of that prior conviction.  Because Defendant affirmed that he had a prior felony drug conviction and that conviction was proper as sentence enhancer, Claims 81 and 82 fail.

Finally, Defendant states in Claim 83 that Mr. Coffey was ineffective for not bringing Mr. Kincer's ineffective assistance to the Court's attention.  Defendant cites no case law for the proposition that Mr. Coffey had such an obligation.  Ordinarily courts "will not review a claim of ineffective assistance of counsel on direct appeal because the record is usually insufficient to permit an adequate review of such a claim."  *United States v. Gardner*, 417 F.3d 541, 545 (6th Cir. 2005).  The record pre-trial or pre-plea is even less sufficient, and is not a proper forum for an ineffective assistance of counsel claim.  Thus, this claim also fails.

### K.      Ground Nine – Defendant Was Prejudiced by the Following

Much of this Ground contains claims which are reiterations of Claims addressed in other Grounds.[4]  For the sake of brevity, the Court considers only claims not raised in other Grounds. Defendant raises only one such claim:

> 84. Defendant was prejudiced by Mr. Coffey telling Defendant that if he withdrew his guilty plea, it would make Judge Reeves mad and Defendant would receive a longer sentence.  D.E. 228-3 at 40.

As to this Claim, Mr. Coffey explains:

> Obviously, an attempt to withdraw his guilty plea, a few days prior to sentencing, may have resulted in a loss of some credit for acceptance.  Further counsel is well aware of the requirements in this Circuit which a defendant must meet before a plea of guilty can be withdrawn.  Counsel did not believe Brummett had adequate grounds to successful [sic] withdraw his plea.  As such he advised Brummett not to pursue the issue.

D.E. 240-1 at 8.  Federal Rule of Criminal Procedure 11(d) allows a defendant to withdraw a guilty plea if "the defendant can show a fair and just reason for requesting the withdrawal."  The Sixth Circuit evaluates what constitutes a "fair and just reason" in light of the totality of the circumstances.  *United States v. Catchings*, 708 F.3d 710, 717 (6th Cir. 2013).  This analysis includes the factors set forth in *United States v. Bashara*:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Id.* at 717–18 (quoting *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994)).

---

[4] Additionally, all of Defendant's arguments concerning prejudice have been considered in connection with Defendant's various claims of ineffective assistance of counsel.

Defendant's meaning is unclear, but because Defendant is alleging Mr. Coffey (counsel) did something incorrectly (deficient performance) resulting in prejudice to Defendant, the Court interprets this is an ineffective assistance of counsel claim under *Strickland v. Washington* requiring both deficient performance and prejudice.  466 U.S. 668, 687 (1984).  Even assuming that Defendant is correct that Mr. Coffey provided deficient performance, Defendant has not alleged facts showing support for such a motion to withdraw.  He has therefore wholly failed to establish any prejudice flowing from the alleged deficient performance.  The Court will not speculate as to what Defendant intends.  Additionally, Mr. Coffey has stated that he considered the motion and advised against it.  D.E. 240-1 at 8.  Given the deference afforded to counsel and the difficulty faced by a defendant when attempting to withdraw a guilty plea, this was certainly a reasonable recommendation.  In light of these facts, Defendant has not made a showing of ineffective assistance, and so this claim fails.

### L.      Claims Raised in Defendant's Reply

The Sixth Circuit has consistently held that arguments made for the first time in a Reply are waived.  *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) (citing *Am. Trim, L.L.C. v. Oracle Corp.*, 383 F.3d 462, 477 (6th Cir. 2004)); *see also Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (stating "we have found issues to be waived when they are raised for the first time in motions requesting reconsideration of in replies to responses.").  Because Defendant's arguments listed below first appeared in his Reply, they are waived.  Nevertheless, the Court addresses these arguments to complete the record in the event of objections.

85. Defendant claims that the evidence obtained by officers involved in Operation UNITE was obtained illegally because they had no jurisdiction without a written request from local authorities.  D.E. 248-1 at 14.

86.  Using Defendant's possession of a controlled substance in the first degree conviction against him three times (original conviction, persistent felony offender enhancement, and in the current case as a sentence enhancer) for a total of 18 years of potential or actual incarceration (3 years, 5 years, and 10 years) is unconstitutional.  D.E. 248-4 at 4.

As to Claim 85, Defendant is referring to the Kentucky Court of Appeals decision *Johnson v. Commonwealth*, Nos. 2010-CA-001867-MR, 2010-CA-001868-MR, 2012 WL 2051961 (Ky. App. June 8, 2012) in which that court held that, as a branch of the Attorney General's Office, Operation UNITE was required to request in writing "to intervene, participate or direct any investigation or criminal action."  *Id.* at *2.  That opinion is dated June 8, 2012, which is well after Defendant's case became final.  There is no indication that the Kentucky Court of Appeals intended this ruling to be retroactive in any way.  Thus, Defendant may not avail himself of its ruling, and his claim fails.  Even if somehow retroactive, there is no evidentiary support for Defendant's contention.

Finally, Defendant states that the repeated use of his conviction of possession of a controlled substance in the first degree to sentence him to terms of incarceration is unconstitutional.  Defendant does not explain in what manner the use of his prior conviction is unconstitutional.

Defendant pled guilty to conspiracy to manufacture 50 or more grams of methamphetamine in violation of 21 U.S.C. § 846.  D.E. 187 at 1.  The penalties for a conspiracy charge are determined by the penalties for the underlying offense charged in the conspiracy.  21 U.S.C § 846.  In this case, Defendant's minimum and maximum penalties were statutorily set by 21 U.S.C. §841(b)(1)(A), part of which provides: "If any person commits such a violation after a

prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment . . ."  The Sixth Circuit has expressly rejected that "the enhancement of a sentence under § 841(b) on the basis of prior felony drug convictions violates double jeopardy."  *United States v. Kelsor*, 665 F.3d 684, 701 (2011).  Therefore, without further explanation as to why using Defendant's prior felony drug conviction as a sentence enhancer was unconstitutional, Defendant's claim fails.  Nor does this Court have jurisdiction via a § 2255 motion to address any deprivation of constitutional rights by a state court.

Because Defendant has cited no case law or cogent argument proving the unconstitutionality of using his prior conviction as a sentence enhancer in both Kentucky and federal law, Claim 86 fails.

## M.    Defendant's Alleyne Claim

In his Order granting Defendant's Motion for Permission to Submit a Supplemental Brief as to Rocky Brummett's 2255 Motion (D.E. 253), Judge Reeves denied Defendant's request to file a supplemental brief.  D.E. 254.  However, Judge Reeves granted the motion to the extent that the Court would consider the recent United States Supreme Court case *Alleyne v. United States*, 133 S. Ct. 2151 (2013) in connection with Defendant's § 2255 Motion.  D.E. 254.

In *Alleyne*, the Supreme Court overruled *Harris v. United States*, 536 U.S. 545 (2002), which held that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), did not apply to fact-finding in support of statutory mandatory minimum sentences.  *Alleyne*, 133 S. Ct. at 2163; *Harris*, 536 U.S. at 557.  Thus, under *Harris*, while "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to

a jury, and proved beyond a reasonable doubt," *Apprendi*, 503 U.S. at 490, the same was not true for facts increasing mandatory minimum sentences. *Harris*, 536 U.S. at 557.

In overruling *Harris*, the Court found that "[f]acts that increase the mandatory minimum sentence are therefore elements and must be submitted to the jury and found beyond a reasonable doubt." *Alleyne*, 133 S. Ct. at 2158. The Court also noted that "the principle applied in *Apprendi* applies with equal force to facts increasing the mandatory minimum." *Id.* at 2160. Thus, other than the fact of a prior conviction, any fact that increases the prescribed statutory minimum must be established beyond a reasonable doubt. However, that does not mean such facts must be found by a jury, for it is universally recognized that such facts may be established by a knowing, voluntary, and intelligent guilty plea supported by an adequate factual basis. *United States v. Booker*, 543 U.S. 220, 244 (2005) (recognizing that facts admitted by a defendant need not be proven to a jury beyond a reasonable doubt).

Under 21 U.S.C. § 841(a)(1) & (b)(1)(A)(viii), the mandatory minimum sentence for a defendant convicted of knowingly or intentionally manufacturing, distributing, or dispensing 50 grams or more of methamphetamine is 10 years. However, if the defendant has a prior final conviction for a felony drug offense, the statutory mandatory minimum is increased to 20 years. This is the situation in which Defendant found himself. Defendant's mandatory minimum was indeed increased, but it was increased because of a prior conviction and his own admission to a conspiracy involving 50 grams or more of methamphetamine. Defendant stated during his rearraignment that he and his co-defendants "conspired knowingly and willingly to manufacture methamphetamine, at least 50 grams." D.E. 205 at 21–26. This statement was made with the solemnity that requires a presumption of validity. Defendant knowingly, voluntarily, and intelligently pled guilty after Judge Reeves read the sole count of the indictment, and Defendant

even indicated that the quantity "was at least 50." D.E. 205 at 22. His own description of the facts under oath at rearraignment, including his acknowledgement of having a previous felony drug conviction, triggered the penalties under 21 U.S.C. § 841(b)(1)(A). Therefore, *Alleyne* has been fully complied with and affords Defendant no relief.

### III. CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a movant has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 335–38 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *see Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). For dismissals on procedural grounds, as to when a Certificate of Appealability should issue, a movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

The Court has considered the issuance of a Certificate of Appealability as to each and every claim presented by Defendant. However, no reasonable jurist would find the assessments on the merits above to be wrong or debatable; thus, no Certificate of Appealability should issue. Moreover, many of Defendant's claims are procedurally barred, but no jurist of reason would find that the question of whether the motion states a valid claim of the denial of a constitutional

right is debatable.  Nor would any jurist of reason find the correctness of the procedural rulings above to be debatable.

## IV. AN EVIDENTIARY HEARING IS NOT REQUIRED

In various places in his reply brief, Defendant requests an evidentiary hearing.  "An evidentiary hearing is required unless 'the record conclusively shows that the petitioner is entitled to no relief.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996)).  Here, the record conclusively shows that Defendant is entitled to no relief.  Thus, an evidentiary hearing is not required.

## V. RECOMMENDATION

For the reasons discussed above, the Court **RECOMMENDS** that the District Court **DENY** Defendant's motion for 28 U.S.C. § 2255 relief.  Because the record conclusively shows that Defendant is not entitled to relief on the denied grounds, the Court need not conduct an evidentiary hearing.  The Court also **RECOMMENDS** that the District Court **DENY** a Certificate of Appealability as to all claims.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings, Rule 8(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court.  Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of

further appeal to or review by the District Court and Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 17th day of July, 2013.

Signed By:

Hanly A. Ingram

United States Magistrate Judge