UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | Criminal Action No. 6: 07-103-DCR |
| | ) | Civil Action No. 6: 12-7200-DCR |
| V. | ) | |
| | ) | |
| ROCKY BRUMMETT, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant/Movant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant/Movant Rocky Brummett's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Record No. 224] Consistent with local practice, the matter was referred to United States Magistrate Judge Hanly A. Ingram for consideration. 28 U.S.C. § 636(b)(1)(B). Based on his review of the record and applicable law, Magistrate Judge Ingram recommended that Brummett's motion be denied and that a certificate of appealability should not be issued. [Record No. 257]

Brummett filed objections to the Recommended Disposition on August 9, 2013. [Record No. 261] Having conducted a *de novo* review of the portions of the recommendation to which Brummett objects, the Court will adopt the Magistrate Judge's Recommended Disposition and deny the relief sought by Brummett.

-1-

# I.

On November 2, 2007, a federal grand jury returned an indictment against Rocky Brummett and four co-defendants. The indictment charged the defendants with conspiring to knowingly and intentionally manufacture fifty grams or more of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846. [Record No. 1] Brummett faced a term of imprisonment of twenty years to life, a fine of up to $8,000,000.00, and a term of supervised release of not less than five years.

Fred White was appointed as Brummett's counsel at the arraignment hearing held on January 9, 2008. However, approximately two months later, White moved the Court for permission to withdraw from the case after he was appointed judge for the Whitley District Court. [Record No. 60] The Court granted the request and appointed Jason Kincer to represent Brummett. [Record No. 61] After evaluating the case, Kincer filed a notice on April 24, 2008, that he intended to pursue an insanity defense. Additionally, a competency evaluation was requested. [Record No. 76] Ultimately, the Court concluded that Brummett was competent to stand trial. [Record No. 111] Brummett then filed a *pro se* motion for substitution of counsel which the Court granted. Willis Coffey was appointed as Brummett's third attorney on November 5, 2008. [Record Nos. 126, 139]

Subsequently, Brummett determined that it was not in his best interest to proceed to trial.[1] He pled guilty to the sole count of the indictment on December 11, 2008. [Record No.

---

1     Co-Defendants Bonnie White, Timothy Roberts, Christopher Buttrey and Kyle Johnson pleaded guilty on May 5, 2008. [*See* Record Nos. 89, 91, 93, 97.] Each Plea Agreement specifically

141] Prior to sentencing, Brummett objected to portions of the Presentence Investigation Report ("PSR"), arguing that he should not be considered a leader or organizer of the conspiracy and should not be subjected to a four level sentencing enhancement under United States Sentencing Guidelines (USSG") § 3B1.1(a). [Record No. 176] The defendant also asked the Court to consider a downward departure from his guideline range under USSG § 5H1.6, claiming an inability to fulfill his parental responsibilities from prison. [*Id.*] Counsel for Brummett also filed a supplemental sentencing memorandum in which he argued that the defendant's federal sentence should run concurrent or partially concurrent with an

---

identified Brummett as a co-conspirator. [*See* Record Nos. 88, 92, 94, and 96.] For example, Defendant White's Plea Agreement states, in part, that:

> From on or before June 17, 2005, and continuing through on or about January 11, 2007, in Laurel County, in the Eastern District of Kentucky, and elsewhere, the Defendant knowingly conspired with Rocky Brummett, and others, to manufacture at least 50 grams of methamphetamine. As part of the conspiracy, the Defendant admits that she would buy and/or steal pseudoephedrine pills used in the manufacture of methamphetamine by Rocky Brummett and others. In return for supplying these pseudoephedrine pills to Rocky Brummett and others, the Defendant would receive money and/or methamphetamine. The Defendant would obtain these pills from various places in Kentucky, and other states, including Tennessee, Indiana, Georgia, and Ohio. The Defendant admits that she was arrested locally in both Ohio and Georgia while on trips to obtain pseudoephedrine pills for Rocky Brummett and others to use to manufacture methamphetamine . . .

[Record No. 96] Thus, if Brummett had proceeded to trial, he faced substantial and compelling evidence of his guilt, including the potential testimony of his co-conspirators.

undischarged state conviction.  [*Id.* at 1] Ultimately, the Court agreed that an enhancement under § 3B1.1(a) would not be appropriate in Brummett's case.  [Record No. 206, p. 5][2]

Brummett executed a written Plea Agreement approximately one week before his change of plea hearing which was held on December 11, 2008.  [Record Nos. 141, 142]  His sentencing hearing was held on April 7, 2009.  The Plea Agreement was accepted by the Court on that date.  [Record No. 186]  The Plea Agreement confirmed that Brummett would plead guilty to the single charge in his indictment and that the United States would recommend reducing his offense level by up to three levels under USSG § 3E1.1 for acceptance of responsibility.  [Record No. 187, p. 2]  In paragraph seven of the Plea

---

2    On April 2, 2009, the Court received a letter from Brummett, stating that he had several issues he attempted to get addressed, but failed.  [Record No. 185]  These issues included claims of ineffective assistance of counsel and allegations of impropriety by the Assistant United States Attorney prosecuting his case.  [*Id.*]  The letter was discussed by Brummett's attorney at the beginning of the sentencing hearing held on April 7, 2009.  The following excerpt of the transcript of this hearing is noteworthy.

MR. COFFEY:  Your Honor, again, let me make these comments if I may. I met with Mr. Brummett this morning in light of a letter that he had sent to the Court a few days ago raising some additional issues.  I wasn't sure when I read the letter what he meant regarding some of the things contained there.  So I did get here early this morning, I wanted to talk to him about that, and I can advise the Court, number one, that he does seek – wishes me to proceed with sentencing this morning, that it was not an intent to withdraw his plea, and then I specifically asked him if he wanted me to continue as his attorney for sentencing today, and he answered that in the affirmative, that he did want me to continue as his counsel today.

[Record No. 206, pp. 3-4] Brummett did not disagree with his attorney's representations during the sentencing hearing.

It is this Court's standard practice to file all letters received from defendants – and third parties concerning defendants – in the record.  The letter from Brummett appears as Record No. 185.

Agreement, Brummett waived his right to appeal and the right to collaterally attack his guilty plea and conviction.  [*Id.*, pp. 2-3]

During the sentencing hearing, the Court declined to apply a downward departure under USSG § 5H1.6, but stated that it would consider Brummett's family ties and strong work history by not imposing a sentence higher than the mandatory minimum term.  [Record No 206, pp. 27-28]  The Court also rejected Brummett's argument that his sentence should run concurrent or partially concurrent with his undischarged state sentence.  [*Id.*, pp. 29-31]  And according to the United States, the information provided by Brummett was insufficient to justify a departure.  [Record No. 207]  As a result, a downward departure under USSG § 5K1.1 and 18 U.S.C. § 3553(e) was not appropriate.

After reviewing the relevant statutory factors, the Court sentenced Brummett to the mandatory minimum term of 240 months of incarceration, to run consecutive to any term of imprisonment previously imposed under any previous state or federal sentence.  [Record No. 206, p. 31]  Brummett filed a Notice of Appeal with the United States Court of Appeals for the Sixth Circuit on the day following his sentencing hearing.  [Record No. 192]  The Sixth Circuit granted attorney Coffey's motion to withdraw as counsel.  [Record No. 197]

On direct appeal, Brummett challenged the denial of his request that his federal sentence run concurrent, or partially concurrent, with his undischarged state sentence. [Record No. 211]  However, the Sixth Circuit affirmed this Court's judgment.  *United States v. Brummett*, 402 F. App'x 126 (6th Cir. 2010).  Next, Brummett filed a petition for a writ of certiorari with the United States Supreme Court.  However, that petition was denied.

*Brummett v. United States*, 131 S. Ct. 1803, 179 L. Ed. 2d 668 (2011). Brummett then returned to this Court seeking habeas relief under 28 U.S.C. § 2255.

Brummett makes several claims in his current motion, arguing that: (i) his counsel was ineffective in violation of the Sixth Amendment and decisions of the Supreme Court; (ii) his guilty plea was involuntarily; (iii) the Government withheld evidence during his case; (iv) there was governmental misconduct that violated his Fifth and Fourteenth Amendment rights; (v) there were errors in determining his sentencing due to ineffective assistance of counsel; (vi) this Court allegedly failed to correctly determine the drug quantity attributable to him, failed to conduct evidentiary hearing to determine if the Government breached the plea agreement, and failed to address issues regarding ineffective assistance of counsel raised in Brummett's letter proceeding the sentencing hearing; (vii) his prior conviction should not have been used to enhance his sentence; (viii) the drug quantity attributable to Brummett was incorrect because the actions of his co-conspirators were not reasonably foreseeable to him; (ix) there were errors during his change of plea hearing; and (x) he was prejudiced by his prior claims and Mr. Coffey telling him not to withdraw his plea because it would result in imposition of a life term. [Record No. 228, pp. 4-8]

After reviewing all matters filed in the record, the Magistrate Judge concluded that the waiver provision of the Plea Agreement was valid and enforceable. The Magistrate Judge also concluded that Brummett had failed to establish a valid claim of ineffective assistance of counsel. Specifically, he determined that Brummett failed to show that counsel's

performance fell below professional standards and failed to establish that a different result would have been obtained but for counsel's alleged errors.

## II.

A defendant in custody may move the court which imposed the sentence to vacate, set aside or correct it. 28 U.S.C. § 2255. In seeking such relief, the defendant may claim that the sentence was imposed in violation of the Constitution or federal law, that the court lacked jurisdiction, that the sentence imposed was in excess of the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. *Id*. "To prevail on a § 2255 motion alleging a constitutional error, the movant must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citations omitted). Additionally, "[t]o prevail on a § 2255 motion alleging non-constitutional error, the [movant] must establish a 'fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process.'" *Id*. (citations omitted).

## III.

A district court must make a *de novo* determination of those portions of a magistrate judge's recommended disposition to which an objection is made. 28 U.S.C. § 636(b)(1)(C). However, "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## A.    Waiver of Collateral Attack

Brummett claims that the waiver of his right to collaterally attack his conviction is invalid and unenforceable.  [Record No. 261, pp. 12-13]  More specifically, he asserts that his fear of going to trial unprepared resulted in the written waiver provision being involuntary.  Contrary to this claim, the Magistrate Judge was correct in concluding that Brummett's waiver was knowingly, intelligently, and voluntarily made.  As a result, the Court will adopt his recommendation regarding this issue.

A valid waiver of the right to collaterally attack a conviction and sentence bars relief under a § 2255 motion.  *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007).  However, to be valid, the waiver must be knowing, intelligent, and voluntary.  *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001).  Rule 11 of the Federal Rules of Criminal Procedure requires the Court to "inform the defendant of, and determine that the defendant understands . . . the terms of any plea agreement provision waiving the right to appeal or collaterally attack the sentence." Fed. R. Crim. P. 11(b)(1)(N).  Complying with the Rule sufficiently demonstrates that the defendant entered into a waiver knowingly, voluntarily, and intelligently.  *United States v. Sharp*, 442 F.3d 946, 950 (6th Cir. 2006); *United States v. Wilson*, 438 F.3d 672, 674 (6th Cir. 2006).

Brummett contends that his fear of proceeding to trial was largely based on his counsel's lack of adequate preparation.  As a result, he did not have a defense to assert.  [*Id.*] But Brummett does not explain how his counsel failed to prepare or investigate.  Without an explanation regarding how his counsel was constitutionally deficient, the deferential standard

from *Strickland* controls. *Strickland v. Washington*, 466 U.S. 668, 691 (1984). Under this standard, there is a "strong presumption that counsel's conduct fails within the wide range of reasonable professional assistance." *Id*. at 689. In the present case, Brummett's claim that his fear resulting from his attorney not subjecting the case to meaningful adversarial testing and having no defense fails because it is a legal conclusion without any factual support. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Machibroda v. United States*, 368 U.S. 487, 495–96 (1962); *Short v. Unit ed States*, 504 F.2d 63 (6th Cir. 1974).

The Court confirmed at Brummett's change of plea hearing that he understood the full import of the waiver provision of his plea agreement. [Record No. 205, pp. 17-18] Review of the record establishes that an appropriate Rule 11 inquiry was conducted. The Magistrate Judge was correct in determining that Brummett waived his rights knowingly, intelligently and voluntarily. Therefore, Brummett's attack of his guilty plea is limited. *In re Acosta*, 480 F.3d at 422; *see also Hill v. Lockhart,* 474 U.S. 52 (1985).

### B.    Ineffective Assistance of Counsel

Brummett argues that the Court did not correctly analyze his ineffective assistance of counsel claim during the pretrial stages of the proceedings. To succeed on this assertion, the defendant must show that his attorney's performance was deficient and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Ineffective assistance under *Strickland* is deficient performance, with performance being measured against an 'objective standard of reasonableness,' 'under prevailing professional norms.'" *Id*. (citations omitted). Thus, a defendant must demonstrate that there is a

reasonable probability that, but for counsel's inadequate performance, the results would have been different. *Strickland*, 466 U.S. at 687. The Court's scrutiny of counsel's performance is highly deferential. Counsel is strongly presumed to have rendered adequate assistance and have made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 689; *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004). Brummett's first objection under the umbrella of ineffective assistance of counsel is that the Court did not visit his claim of ineffective assistance of counsel at the pretrial stages of his proceeding. [Record No. 261, pp. 5-11]

### 1.        Claims of Ineffective Assistance by Attorney Kincer

Brummett argues that Kincer was ineffective during a proffer session because he told the defendant that any statements given would not be used against him at trial. [Record No. 261, p. 5] Brummett has not shown that this alleged error resulted in any actual prejudice. According to Kincer, he and Assistant United States Attorney ("AUSA") Roth advised Brummett that his proffer statements would not be used against him unless he testified differently at trial. [Record No. 240-2, p. 3]

Brummett claims that he will submit to a polygraph examination about the statement allegedly made by Kincer, but that does not help his objection because he does not speak to the statement of AUSA Roth. Further, Brummett cannot explain how the statement has caused prejudice. Under the facts presented, the Court does not find that counsel's performance was deficient under *Strickland*. Coffey was appointed to represent Brummett

after Kincer was removed from the case. Brummett fails to explain how he was prejudiced after Coffey provided him correct advice regarding these statements.

Brummett also contends that Kincer did not make a reasonable investigation of the case. However, as the Magistrate Judge correctly noted, this issue was rendered moot with the appointment of Coffey. But Brummett argues that Coffey did not reasonably investigate the case, subject it to adversarial testing, or prepare for trial. Thus, he claims that the appointment of Coffey did not cure these defects.

## 2. Claims of Ineffective Assistance by Attorney Coffey

Although Brummett also claims that Coffey failed to properly investigate his case, he has failed to provide any specific examples of what Coffey failed to investigate. Again, he does not explain how Coffey failed to submit his case to meaningful adversarial testing, aside from his general allegation of a lack of investigation which is insufficient under *Strickland*. Brummett also claims that Mr. Coffey made no attempt to prepare a defense for trial. However, a review of the record contradicts him on this point. Coffey states in his affidavit that he

> was zealous in his efforts to a) furnish Brummett with a complete copy of all discovery which counsel had in his possession and more importantly b) take sufficient time to review to the discovery with Brummett. From review of counsel's records, I personally met with Brummett six times, wrote him 20 times . . . and had several phone conversations with him.

[Record No. 240-1, p. 3][3] This affidavit undercuts Brummett's argument that Coffey did not adequately prepare for trial. Coffey evaluated the discovery produced by the government and communicated with Brummett throughout the proceeding. Additionally, he successfully objected to Brummett being classified as the leader of the conspiracy, resulting in a lower guideline range for incarceration. [Record No. 206, pp. 4-5] And although Brummett argues that Coffey's trial strategy was dominated by the PSR, Coffey correctly states in his affidavit that the evidence against the defendant was "overwhelming." [*Id.*, p. 5] Under the circumstances presented, the representation provided by Coffey cannot be said to fall outside of the range of professional norms as required by *Strickland*. Thus, the effective representation provided by Coffey cured any alleged defective performance by Kincer.

Brummett also contends that the evidence demonstrates that he intended to proceed to trial. However, he fails to argue with sufficient specificity how the particular actions of Kincer and Coffey caused to him plead guilty and not go to trial. According to Brummett, he was afraid to proceed to trial based on Coffey's lack of preparation. However, as outlined above, Coffey's performance was not deficient but fell within the broad range of professional acceptability. Thus, Brummett's objection fails under both prongs of *Strickland*.

Brummett also asserts that the Magistrate Judge misinterpreted Kincer's statements about his proffer. [Record No. 261, pp. 14-15] According to Brummett, he intended to claim that he was going into the proffer – not because of Mr. Kincer's statement – but to evaluate

---

3    Brummett seems to ignore the obvious: attorneys cannot create facts but must deal with evidence. In this case, there was extensive evidence of Brummett's guilt.

the proffer. He contends that prejudice arose after the appointment of Coffey. However, Brummett again fails to make an adequate claim of prejudice. As previously noted, Kincer stated in his affidavit that the statements would not be used against Brummett unless contradicted himself at trial. [Record No. 240-2, p. 3] Brummett also fails to point any specific statement made during proffer that compelled him to plead guilty rather than proceed to trial. Likewise, he fails to explain how prejudice occurred following the appointment of Coffey.

Brummett further argues that Coffey was ineffective based on his lack of notes. However, he does not cite any authority for this claim. Again, the Court finds that this objection lacks merit. Brummett does not overcome the "strong presumption that counsel's conduct falls within the wide range of professional assistance." *Strickland*, 466 U.S. at 689.

Brummett objects to the Magistrate Judge's ruling on claim 60 which alleges that Coffey failed to investigate the drug quantity attributed to him. [Record No. 261, p. 22] He states that if the drug quantity had been properly investigated, the amount would have been less than fifty grams and would have resulted in a lesser sentence. However, Brummett does not offer any evidence regarding how this investigation would lead to a lower amount. In his objection Brummett claims that, while he admitted to possessing over 50 grams of methamphetamine, his plea was involuntary. However, as addressed below, this argument fails.

Brummett admitted during his change of plea hearing that he conspired to knowingly and willingly manufacture at least fifty grams of methamphetamine. [Record No. 205, pp.

21-26] "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the records are wholly incredible." *Blackledge v. Allison*, 431 U.S. at 74. The Magistrate Judge correctly concluded that statements given in court are considered more trustworthy than conclusory allegations, unsupported by specific facts. Brummett's objection adds nothing by way of evidence or proof of a lower drug quantity. Therefore, the Court will adopt the recommended disposition of the Magistrate Judge on this point.

Brummett objects to the Magistrate Judge's recommendation regarding claim eighty-four which alleges that the defendant was prejudiced by Coffey telling him that if he withdrew his guilty plea it would make the undersigned mad and he would receive a longer sentence. [Record No. 228, p. 40] Brummett asserts that Coffey became irrate when he asked about the possibility of withdrawing his plea, saying that he would get life in prison. [Record No. 261, p. 27] Brummett fails to specifically object or raise any legal arguments to the Magistrate Judge's recommended disposition but rather restates the original argument in similar language. Advising the defendant about the consequences of withdrawing his plea is not ineffective assistance of counsel. Instead, Coffey had an obligation to so advise Brummett. The Court will also adopt the Magistrate Judge's recommendation regarding this issue.

Next, Brummett objects to the Magistrate Judge's recommendation regarding: (i) Coffey's reliance on the Government's evidence; (ii) Coffey's alleged ineffectiveness for not

arguing that Brummett played a minor role in the conspiracy; and (iii) the Court's failure to conduct an evidentiary hearing to determine whether the government breached the plea agreement. [Record No. 261, pp. 22-25] As the Magistrate Judge noted, Coffey believed that the sentencing level could actually be higher if the historical information in the Presentence Investigation Report was true. [Record No. 204-4, p. 24] Therefore, objecting to the drug quantity could have left Brummett in a far worse position.

Brummett states that the information should have been investigated earlier but he provides no facts in support of a lower drug quantity. Again, the Court agrees with the Magistrate Judge that this decision falls within the wide boundaries of professional behavior as discussed in *Strickland* and *Bigelow*.[4]

Brummett also claims that the Court erred by not conducting an evidentiary hearing regarding Brummett's claim that the United States breached the Plea Agreement. [Record No. 261, pp. 23-25] Brummett contends that he provided assistance which should have been considered under USSG 5K1.1 and that the refusal of the AUSA to request a downward departure was done in bad faith. Therefore, he argues that the Court should have granted an evidentiary hearing. However, absent some evidence of bad faith or that the decision was made for an impermissible reason, the decision to move for a downward departure is within the government's discretion. Mere allegations that the defendant believed he provided

---

4    The Court also acknowledges Brummett claims that Coffey provided ineffective assistance by relying on a authority he supplied regarding the objection to him being the leader of the conspiracy. However, notwithstanding the truth or falsity of this claim, no prejudice resulted. As stated previously, Coffey was successful regarding the leadership issue. [Record No. 206, pp. 4-5]

substantial assistance are not enough.  Further, Brummett does not identify what constituted bad faith on the part of the government.  His vague contentions are simply insufficient.

### 3. Ineffective Assistance Claims Regarding Attorneys Coffey and Kincer

Brummett argues that the Magistrate Judge was incorrect in stating that claims thirteen through nineteen failed.[5]  [Record No. 261, pp. 15-17]  Brummett again claims that there was a complete breakdown of the adversarial process and that his attorneys did not make a meaningful investigation of the relevant facts.  He particularly objects to the Magistrate Judge's recommendation that claims thirteen, fourteen, and sixteen all fail for a lack of specificity.[6]  But Brummett again fails to explain with any specificity how his attorneys failed to property investigate the case.  And he does not identify any possible witnesses or facts that counsel would have discovered with a more thorough investigation.  Instead, Brummett simply claims that both of his attorneys were ineffective because their decisions were based on the prosecution's evidence.  Again, this argument fails for a lack of specificity.

---

5        These claims were classified as ineffective assistance of counsel claims for both Mr. Coffey and Mr. Kincer.

6        Brummett argues that Kincer and Coffey did not investigate the facts, interview witnesses favorable to the defendant, or subject the United States' case to meaningful adversarial testing.

### 4.    Construed Ineffective Assistance of Counsel Claims

Brummett argues that claims seventy-one to seventy-nine of Brummett's original motion should have been construed as ineffective assistance claims.[7] [Record No. 261, pp. 26-27] He asserts that these claims should have been tested in preparation of trial in deciding whether his rights were violated and that these issues are unsettled. [*Id.*] However, Brummett does not explain how the Magistrate Judge's determinations were incorrect. Further, Brummett does not state how these claims fail the deferential test of *Strickland*, but conclusively argues that there was a breakdown of the adversarial process as a result of his attorneys' failure to properly investigate the case.

As stated above, a § 2255 motion must contain more than legal conclusions unsupported by factual averments. *Blackledge*, 431 U.S. at 74; *Machibroda*, 368 U.S. at 495-496; *Short,* 504 F.2d 63. While his argument of reclassifying these issues as ineffective assistance of counsel avoids procedural default, he still fails to discuss how his counsel was ineffective under *Strickland*. Brummett also fails to specifically argue or address the specific rationale of the Magistrate Judge for any of these issues, except procedural default. Brummett does not address how these issues are barred by his Plea Agreement or by his admissions in open court during which he acknowledged conspiring with others to

---

7    In claims seventy-one to seventy-nine, Brummett argues that the drug quantity attributable to him in this case was incorrect because the drug quantity of his co-conspirators was not reasonably foreseeable to him. [Record No. 257, pp. 56-59]

manufacture at least fifty grams of methamphetamine. Again, the Court agrees with the Magistrate Judge on these claims and finds that this claim of ineffective assistance fails.

Brummett's next argues that claims thirty-nine through fifty "should have been argued ineffective assistance of counsel and prejudice the defendant's defense and preparation for trial."[8] [Record No. 261, p. 19] Again, to establish a claim of ineffective assistance of counsel, a petitioner must demonstrate that there is a reasonable probability that, but for counsel's inadequate performance, the results would have been different. *Strickland*, 466 U.S. at 687. For a conviction resulting from a guilty plea, a movant must show that there is a reasonable probability that, but for counsel's errors, he would have not pleaded guilty and insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Here, Brummett has not made such a showing.

Brummett merely states that the listed claims should be reclassified as assertions of ineffective assistance of counsel, but does not explain how it would have caused him to insist on proceeding to trial but for these mistakes. Brummett does not state with any specificity how his counsel was deficient with respect to these claims. Brummett also fails to object to the Magistrate Judge's recommendations regarding claims thirty-nine to fifty. [Record No. 257, pp. 38-44] Again, the Court will adopt the Magistrate Judge's recommendations regarding these claims.

---

8    Brummett argues that the government withheld evidence and that there were various instances of government misconduct. [Record No. 224-5, pp. 23-28]

### C.     The Voluntariness of Brummett's Guilty Plea

The Magistrate Judge correctly determined that Brummett guilty plea was intelligent and voluntary. *See e.g., In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007). Rule 11 of the Federal Rules of Criminal Procedure requires that a district court verify that a defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, and the consequences of the guilty plea. The court must also determine that there is a factual basis to support the conclusion that the defendant committed the crime charged. *United States v. Goldberg,* 862 F.2d 101, 106 (6th Cir. 1988); Fed. R. Crim. P. 11. In *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999), the Sixth Circuit held that a trial court's proper plea colloquy cures any misunderstandings that a defendant may have about the consequences of a plea.

Brummett contends that his plea was not voluntary because of his fear of going to trial unprepared. [Record No. 261 pp. 12, 18] He further states that attorney Coffey told him that he had to plead guilty or go to trial. [*Id*., p. 12] He argues that his fear of going to trial unprepared made him involuntarily accept the plea deal offered by the government. [*Id*.] During the change of plea hearing, the Court asked Brummett several questions to determine his competency. [Record No. 205, pp. 4-8] The defendant stated under oath that he had received a copy of his indictment, read it, and understood the charges against him. [*Id*., p. 8] Brummett expressed satisfaction with Coffey's representation and advice and confirmed that he had discussed the indictment with Coffey, understood its terms, and that it was the only plea agreement he had with the United States. [*Id*., pp. 9-10] The Court asked the

Government to review the plea agreement and both Brummett and Coffey confirmed that the summary was accurate. [*Id.*, pp. 10-12]

Brummett stated that no one else had promised him anything to induced him to plead guilty. Likewise, his plea was not the result of any force or threats. [*Id.*, pp. 12-13] Brummett was advised of the rights he was surrendering by entering a guilty plea and informed of the relevant statutory penalties, including the mandatory minimum term of incarceration. [*Id.*, pp. 13-14] The Court then: (i) advised Brummett of the manner in which the Sentencing Guidelines would be considered; (ii) advised Brummett of the consequences of waiving his right to collaterally attack the plea and conviction; and (iii) explained the rights Brummett could assert if the matter proceeded to trial. [*Id.*, pp. 14-23]

At the time of his guilty plea, Brummett acknowledged that he had reviewed the Plea Agreement with counsel and that he was satisfied with the advice and representation provided by his attorney. [*Id.*, p. 8] Although Brummett now claims that his plea was involuntary, the record confirms just the opposite. At the time of the guilty plea, Brummett swore that his plea was completely voluntary. And the record clearly demonstrates that Brummett understood the consequences of pleading guilty. Any alleged deficiencies in counsel's performance were cured by the colloquy with the Court during the plea hearing. Brummett's claim that he was forced to enter a guilty plea out of fear is without merit. The terms of the plea agreement are valid and enforceable.

### D. Alleged Government Misconduct

Brummett argues that the AUSA acted in bad faith in representing that she did not have authority to withdraw the notice of penalty enhancement filed pursuant to 21 U.S.C. § 851. [Record No. 261, p. 19] In support, he cites ABA standard § 3-4.1 (c) which states that prosecutors may not make false statements regarding the acts or applicable law during plea discussions with defense counsel or the accused.

The Court adopts the rationale of the Magistrate Judge's recommended disposition regarding this issue. Brummett has failed to explain how he was prejudiced by the alleged statement. According to 21 U.S.C. § 851(c), a defendant may contest a penalty enhancement and the United States may then respond to the defendant's objection. Here, the record shows that Brummett and counsel discussed objecting the notice but did not raise the issue with the Court. [Record No. 240, p. 3] As the Magistrate Judge correctly noted, it was Brummett's obligation to raise the issue but he never did. Thus, this argument fails.

Brummett's next argues that the AUSA acted in bad faith by failing to file a motion for departure. [Record No. 261, pp. 19-21] However, the Court agrees with the Magistrate Judge's contrary conclusion. Under 18 U.S.C. § 3553(e) and USSG 5K1.1, a motion for downward departure was conditional upon Brummett providing substantial assistance to the government relating to the investigation or prosecution of others. [Record No. 187] The record indicates that the AUSA did not file a motion for a downward departure because Brummett did not provide substantial assistance. [Record No. 207, p. 9]

And as noted previously, the decision regarding whether Brummett's assistance was substantial was within the United States' discretion. The Government has discretion – not a duty – to move for a downward departure if substantial assistance is given. Mere allegations that a defendant provided substantial assistance is not enough to invoke review. *Wade v. United States*, 504 U.S. 181, 185 (1992). Courts have authority to review a prosecutor's refusal to file a downward departure based on substantial assistance if that refusal is based on an unconstitutional motive like race or religion. *Id.* at 185. Brummett has made no such claim here. Therefore, the argument that the government acted in bad faith by not moving for a downward departure fails.

### E.    Other Objections

The Magistrate Judge concluded that Brummett's Plea Agreement barred independent claims relating to the deprivation of constitutional rights. Brummett objects to this conclusion and argues that the deprivation occurred prior to the entry of a guilty plea. However, as the Magistrate Judge correctly indicated, after there has been a plea, a defendant cannot later "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of a guilty plea." *Tollet v. Henderson*, 411 U.S. 258, 277 (1973). [Record No. 257, p. 39] While Brummett claims that he attempted to argue about these issues prior to the plea, the rule in *Tollet* applies. Brummett voluntarily and knowingly entered into a written Plea Agreement. Thus, any claim relating to a claimed deprivation of constitutional rights occurring prior to a guilty plea is barred by the knowing and voluntary acceptance of that plea.

Brummett's objects that claims sixty-four, sixty-five, and sixty-six were incorrectly analyzed by the Magistrate Judge. [Record No. 261, pp. 18-19] He asserts that, for claims sixty-four and sixty-five, the only evidence present was the PSR. He argues that this is a result of the ineffective assistance of counsel and failure to investigate. Again, Brummett does not specify what facts his attorney failed to investigate or how these facts would have resulted in a lower drug quantity. Again the Court concludes that attorney Coffey did not breach his duty under *Strickland*.

Regarding claim sixty-six, Brummett asserts that the Court did not fully consider Coffey's interaction with him before the sentencing hearing. He contends that Coffey was upset and stated that if he withdrew his plea it would make the undersigned mad, resulting in a more lengthy sentence. [Record No. 261, p. 25] This issue is addressed above.

Claim sixty-six also asserts that this Court did not address any of the issues raised by Brummett in his letter to the Court sent prior to the sentencing hearing. This letter primarily raised ineffective assistance of counsel claims. [Record No. 185] However, as noted above, Brummett's letter was discussed at sentencing by the Court. Coffey stated that he had met Brummett that morning to discuss the letter and that "he wishes me to proceed with sentencing this morning . . . and then I specifically asked him if he wanted me to continue as his attorney for sentencing today, and he answered that in the affirmative. [Record No. 206, pp. 3-4] Brummett did not raise any issue with Coffey's representation at the sentencing hearing and Coffey continued to represent him throughout the hearing. [Record No. 206] Additionally, the Court has already discussed at length Brummett's ineffective assistance of

counsel claims regarding Coffey and found them to be without merit. Therefore, this argument also fails.

Brummett also asserts that the Magistrate Judge incorrectly stated that he offered no proof or evidence of specific claims. [Record No. 261, p. 26] He contends that he did provide evidence and there was no proof because of a breakdown of the adversarial process. In spite of his objections, Brummett still fails to provide the Court with any potential evidence, witnesses, and circumstances supporting his claim. He conclusively states that there is no proof because of a breakdown of the adversarial process but does not explain what facts or proof would have been gained but for this alleged breakdown. As stated above and in the Magistrate Judge's recommended disposition, Brummett has failed to make any argument about a breakdown in the adversarial process past labeling it as such.

Next, the defendant contends that the Court erred in its determination that he offered no information or circumstances surrounding his prior conviction that enhanced his sentence. [Record No. 261, p. 26] Brummett argues that someone promised him that he would only receive a probationary sentence for his prior conviction and that rendered his plea agreement involuntary. He claims that, due to his legal inexperience, he did not know that he had to disclose who it was that made him the promise. He states that he thinks it should be discussed off the record. Brummett does not offer any other circumstances surrounding that case. He merely states that he wishes the identity of the person to be kept a secret, but he does not state why. This vague and unsupported objection is without merit.

Brummett argues that the Court had an obligation when he filed his motion for substitution for counsel to inquire about his claims and issues to determine if his issues had merit. [Record No. 261, p. 27] Brummett claims that he confused the Rule 11 inquiry because of his legal inexperience and actually meant the inquiry was required when he filed his motion for substitution of counsel. [*Id.*] Brummett does not cite any authority requiring the Court to investigate the merit of defendant's claims and issues or his satisfaction with former counsel when he files for a motion for substitution of counsel. The Court finds this assertion to be without merit. As discussed by the Magistrate Judge, all of Brummett's complaints regarding Kincer either (i) were cured by the appointment of Coffey in response to Kincer's motion to withdrawal or (ii) did not meet the requirements of deficient performance and prejudice as required by *Strickland*. For these reasons, Brummett cannot show prejudice regarding his motion for substitution of counsel.

Brummett next raises objection regarding ground nine of his original § 2255 motion in which he asserts he was prejudiced by the aforementioned claims in his initial motion. [Record No. 26, pp. 26-27; Record No. 224, pp. 51-56] The Magistrate Judge found that all of these claims, excluding the previously discussed eighty-fourth claim, were reiterations of claims addressed under other grounds. [Record No. 257, p. 62] Brummett argues that he was prejudiced by stating legal conclusions without providing any factual or legal arguments. Again, however, this is not sufficient. *Blackledge*, 431 U.S. at 74, 97 (1977); *Machibroda*, 368 U.S. at 495–96; *Short* 504 F.2d 63.

Brummett next argues that Magistrate Judge was incorrect in stating that his claim does not fall under the holding in *Alleyne*. *See Alleyne v. United States*, 133 S. Ct. 2151(2013); [Record No. 261, p. 29] Brummett contends that, because the government raised his drug quantity to fifty or more grams of methamphetamine without a jury trial, his claim should be considered under *Alleyne*. He further states that he did not voluntarily plead guilty to the drug quantity. The voluntariness of Brummett's plea has been addressed above. The Government did not raise the drug quantity attributable to Brummett, he pled to that amount in a voluntary, intelligent, and knowing plea agreement during his change of plea hearing. Because the Court has determined that the plea and Plea Agreement was valid, Brummett's acceptance of the drug quantity renders this issue without merit. *United States v. Booker*, 543 U.S. 220, 244 (2005) (recognizing that facts admitted by a defendant need not be proven to a jury beyond a reasonable doubt).

## IV.     Evidentiary Hearing

Brummett has not demonstrated an facts that, if fully developed, could lead the Court to find that habeas relief is appropriate. *See Litt v. Coyle*, 261 F.3d 594, 602 (6th Cir. 2001) ("A district court may, in the context of a habeas proceeding, permit discovery, provided that the habeas petitioner presents specific allegations showing reason to believe that the facts, if fully developed, may lead the district court to believe that federal habeas relief is appropriate."). Here, Brummett validly waived the right to appeal or file a separate lawsuit attacking his guilty plea, conviction, and sentence. Therefore, the Court will enforce the waiver provision. Nevertheless, the Court finds that Brummett has failed to raise any meritorious claim.

Accordingly, the undersigned agrees with the Magistrate Judge's conclusion that a hearing is not warranted on Brummett's claims.

## V.    Certificate of Appealability

Finally, the Court finds that a Certificate of Appealability should not issue in this case on any of Brummett's claims.  A Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); 28 U.S.C. § 2253(c)(2).  When the denial of a motion filed under § 2255 is based on the merits, the movant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  However, when the denial is based on a procedural ruling, the movant must show that jurists or reason would find it debatable whether the motion state a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  *Id.*

As discussed above, there is no claim or objection that raises a meritorious issue regarding constitutional rights.  A jurist of reason would not conclude that this Court's assessment of any constitutional claims raised by Brummett is either debatable or wrong.  Further with respect to decisions which are procedurally-based, a jurist of reason would not find them to be debatable.

## VI.    Conclusion

There are a number of excellent attorneys who appear before the Court on a regular basis.  Willis Coffey is one of those attorneys.  In the present case, despite the defendant's current

claims to the contrary, Brummett did not receive ineffective assistance from Mr. Coffey. Instead, Coffey provided very effective representation which prevented the defendant from receiving a more lengthy sentence for his criminal conduct. While the assistance provided may not be apparent to Brummett, it is to the Court.

Based on the foregoing discussion and analysis, it is hereby

**ORDERED** as follows:

1.      United States Magistrate Judge Hanly A. Ingram's Recommended Disposition [Record No. 257] is **ADOPTED** and **INCORPORATED** by reference.

2.      Brummett's objections to the Magistrate Judge's Recommended Disposition [Record No. 261]  are **DENIED**.

3.      Brummett's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 [Record No. 224] is **DENIED**.

4.      The Court declines to issue a Certificate of Appealability for the reasons outlined above.

This 28th day of October, 2013.



Signed By:

*Danny C. Reeves*

United States District Judge